549 A.2d 1291

**In re ADOPTION OF Kristy D. HAMILTON.**

**In re Termination of Parental Rights of Ernest HAMILTON.**

**Appeal of Ernest A. HAMILTON.**

Superior Court of Pennsylvania.

Submitted June 27, 1988.

Filed Oct. 26, 1988.

---

F. Cortez Bell, III, Clearfield, for appellant.

Before ROWLEY, DEL SOLE and BECK, JJ.

BECK, Judge:

Ernest Hamilton appeals from an order of the Clearfield County Orphans' Court, involuntarily terminating his parental rights to his daughter Kristy. In this appeal we especially consider the effect of a parent's subsequent remedial behavior, after abandoning a child, in light of the child's needs and welfare.

Appellee Brenda Wilt, Kristy's natural mother, has custody of the child. Wilt and her new husband, who wishes to adopt Kristy, petitioned to terminate Hamilton's parental rights under 23 Pa.Cons.Stat.Ann. § 2511(a)(1) (Purdon Supp.1988). After a hearing, the orphans' court entered a memorandum and order, dated May 16, 1986, terminating Hamilton's parental rights.

Hamilton appealed, and the Superior Court vacated the order and remanded for proceedings in accordance with the Rules of Civil Procedure including the requirement that the orphans' court enter an adjudication and decree nisi under Rule 1517 and afford the parties an opportunity to file post-trial motions under Rule 227.1. *In re Adoption of Hamilton,* 362 Pa.Super. 249, 523 A.2d 1176 (1987).

Despite our explicit instructions, rather than enter an adjudication and decree nisi, the orphans' court stated that it treated the order of May 1986, which the Superior Court vacated, as a decree nisi. It permitted Hamilton to file proposed findings of fact and conclusions of law in lieu of exceptions. After a hearing, the court then entered a final order on February 5, 1988, in which it implicitly denied Hamilton's challenges to the May 16, 1986 order (decree nisi) and affirmed its order of May 16, 1986. Hamilton filed a timely appeal to the final February 5, 1988 order.

Although ordinarily we might remand for the trial court to follow the proper procedure as formulated in the Rules of Civil Procedure, we will not do so in this case. The trial court explained satisfactorily its deviations from accepted procedure, the parties were not prejudiced by the proce-

dure, meaningful appellate review can be made on the basis of the record, and most importantly, the case involves the relationship of a child to her parents. Given the two-year delay in this case because of the original procedural misstep and the remand, we recognize an urgency in finally resolving this matter.

The evidentiary standard for terminating parental rights was formulated by the United States Supreme Court which established that parental rights may not be terminated in the absence of clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). In *In re: T.R.*, 502 Pa. 165, 465 A.2d 642 (1983) our state supreme court adopted the reasoning of *Santosky* as a matter of state law applicable to all termination proceedings. This principle requires evidence which is "so clear, direct, weighty, and convincing as to enable the [factfinder] to come to a clear conviction without hesitancy of the truth of the precise facts in issue." *In re Shives*, 363 Pa.Super. 225, 227–28, 525 A.2d 801, 802 (1987) (citation omitted). In assessing whether the trial court's determination is based on clear and convincing evidence, we review the chancellor's findings. *In the Matter of Adoption of G.T.M.*, 506 Pa. 44, 46, 483 A.2d 1355, 1356 (1984), *quoted in In re Adoption of Faith M.*, 509 Pa. 238, 240, 501 A.2d 1105, 1106 (1985); *In re J.G.J., Jr.*, 367 Pa.Super. 425, 532 A.2d 1218 (1987). "Absent an abuse of discretion, an error of law or insufficient evidentiary support for the findings of the Orphans' Court, an appellate court will not reverse a hearing court's order to terminate." *Shives, supra*, 363 Pa.Super. at 227–28, 525 A.2d at 802.

We review the facts, with all conflicts resolved in favor of the orphans' court as trier of fact and sole judge of credibility. *In re Adoption of J.J.*, 511 Pa. 590, 515 A.2d 883 (1986). The parties were married in 1977. Kristy was born on July 4, 1977. The parties separated in 1978 and were divorced in 1979. They agreed informally to Wilt's custody of Kristy and Hamilton's right to visitation. Because she received public assistance, Wilt brought a support action

against Hamilton. Hamilton was ordered to pay $52 per month.

Since the separation in 1978, through Christmas 1982, Hamilton had contact with Kristy approximately twice a year, around Christmas and her July birthday. These contacts included visits when Wilt would bring Kristy unannounced to Hamilton's family, and once, Hamilton visited at Wilt's residence. However, the court found that the pattern of contact ceased and in 1983 and 1984 Hamilton had no contact with Kristy. The court made this finding of fact based on Wilt's testimony. It appears that the court did not credit the testimony of two of Hamilton's and one of Wilt's witnesses, who testified to the contrary. During this period, both Wilt and Hamilton remarried. We also note that by 1985, Hamilton accumulated extensive arrearages under the support order.

Sometime in April 1985, Hamilton visited Kristy once. The following week, Hamilton again attempted to see Kristy but Wilt denied him visitation. He filed a petition for visitation. Wilt and Hamilton then stipulated to a visitation schedule which became a court order. Two months after the court entered its visitation order, Wilt and her husband filed the termination petition. In September 1985, Hamilton petitioned the court to enforce the visitation order. The court granted Hamilton's petition to enforce the order.

In Wilt's termination petition, she alleged that during a period of at least six months Hamilton evidenced a settled purpose of relinquishing his parental claim to Kristy and that he refused or failed to perform his parental duties. Acting on Wilt's termination petition, on May 16, 1986 the court entered an order terminating Hamilton's parental rights. It found that for a period of at least six months, Hamilton both evidenced a settled purpose of relinquishing his parental claim or failed to perform his parental duties. This holding was based on 23 Pa.Cons.Stat.Ann. § 2511(a)(1), which provides that parental rights may be terminated if:

the parent by conduct continuing for a period of at least six months either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

■ Parents who fail to have contact or meet their parental obligations to a child for six months do not automatically forfeit their parental rights. Pennsylvania courts have wisely refused to apply the statutory six-month requirement mechanically. Instead the trial court is required to review the entire circumstance and make inquiry into to the reasons for the parent's failure. As has been noted:

> [E]ven where it is established that a parent has failed to perform parental duties for a period in excess of six (6) months "such a finding does not, in and of itself, support an order terminating parental rights." ... Rather, the Court then must examine the individual circumstances and any explanation offered by the parent to determine if that evidence, in light of the totality of circumstances, clearly warrants permitting the involuntary termination of said parent's parental rights.... In deciding this sensitive question, this Court is mindful of the irreversible nature and serious emotional impact which necessarily follow an involuntary termination of parental rights. *In re Adoption of Orwick*, 464 Pa. 549, 555, 347 A.2d 677, 680 (1975) (citations omitted).

*In re Adoption of Ostrowski*, 324 Pa.Super. 216, 219, 471 A.2d 541, 543 (1984).

Courts are required not only to focus on the behavior of the parent but more importantly, are required to consider the effects of termination on the welfare of the child. *In re Adoption of A.N.D.*, 360 Pa.Super. 157, 520 A.2d 31 (1986). 23 Pa.Cons.Stat.Ann. § 2511(b) provides the statutory basis for this principle:

> The court in terminating the rights of a parent shall give primary consideration to the needs and welfare of the child.

" 'Once we have determined that the statutory grounds for involuntary termination of parental rights have been

proved, it is the child's welfare that is paramount.' *Adoption of David C.*, 479 Pa. [1] at 17, 387 A.2d [804] at 812." *Baby Boy A. v. Catholic Social Services*, 512 Pa. 517, 517 A.2d 1244 (1986). "Judicial inquiry is to be centered on the best interest of the child, rather than the fault of the parent." *Adoption of J.J., supra*, 511 Pa. at 595, 515 A.2d at 892.

█ In summary, in Pennsylvania the court first determines if the statutory requirements for termination in Section 2511(a)(1) have been satisfied. If they have, the court assesses any explanation of extenuating circumstances made by the parent. Next the court evaluates any post-abandonment contact between the parent and child, and lastly and most importantly the court assesses the effect of termination on the needs and welfare of the child.

█ On appeal, Hamilton argues that the court erred in finding that for a period in excess of six months he exhibited conduct evidencing a settled purpose of relinquishing his parental claim. We find no merit in Hamilton's assertion and conclude that the court correctly determined that Wilt satisfied the statutory burden. The evidence clearly and convincingly supports the court's conclusion that Hamilton had no contact with Kristy in 1983 and 1984 and that his behavior was consistent with a settled purpose of relinquishing parental claim to Kristy.

The second line of inquiry in appellate review is whether the record shows that Hamilton satisfactorily explained his extended absence from Kristy's life. We find no satisfactory explanation of record for his absence in 1983 and 1984.

However, our inquiry is not at an end. In deciding whether parental rights have in fact been lost, the parent's post-abandonment conduct is relevant. *In re Adoption of Durham*, 320 Pa.Super. 508, 467 A.2d 828 (1983). The totality of the circumstances test includes an evaluation of the period after the abandonment period. *Id.*

█ After the two-year hiatus, Hamilton visited Kristy once, was denied visitation once, petitioned the court to

order visitation, petitioned the court to enforce the visitation, obtained a supersedeas to continue visitation during the appeal process, and obtained an increase in visitation during the lengthy remand procedure. Hamilton's post-abandonment behavior is an affirmative demonstration of his intention to assume parental responsibilities toward Kristy.

■ Although the petition for visitation and the subsequent petition to enforce visitation were in the record at the time of the initial order of May 1986, the orphans' court does not refer to Hamilton's subsequent behavior in its 1986 order or 1988 opinion and final order. It is essential that a court consider post-abandonment behavior in assessing a termination petition.

■ The court erred in not evaluating Hamilton's post-abandonment behavior. *See Harvey Adoption Case,* 375 Pa. 1, 99 A.2d 276 (1953). Parents may not have contact with a child for six months or more and then realize that they have made a terrible mistake. Their renewed efforts at assuming parental responsibilities will not cure prior abandonment but may demonstrate a serious intent to establish and continue a child-parent relationship that will be important and beneficial to the child. To be legally significant the contact must be steady and consistent over a period of time, contribute to the psychological health of the child, and must demonstrate a serious intent on the part of the parent to recultivate a parent-child relationship and must also demonstrate a willingness and capacity to undertake the parental role. The parent wishing to reestablish his parental responsibilities bears the burden of proof on this question.

We are mindful that:

[I]t is well established that once the statutory period of abandonment has passed, mere renewal of interest and expression of desire for the return of a discarded child do not negate the abandonment.... The wise requirement that a parent's right to a relationship with his child can

only be terminated on clear and convincing evidence does not make parents owners of their children, free to cast them aside, as unwanted toys, for more than six months and then pick them up to play with again when the fancy strikes them.

*Baby Boy A. v. Catholic Social Services, supra,* 512 Pa. at 521, 517 A.2d at 1246–47 (citations omitted).

We are not suggesting for example, that a parent may show a settled intention one year to abandon a child and then change his or her mind the following year and automatically preserve his or her rights as a parent. Abandonment has a serious emotional impact upon a child. If an abandoning parent has a change of heart and wishes to reestablish the relationship, in addition to evaluating the parent's behavior, the court must evaluate the effect of the parent's change of heart upon the child. A parent's attempt to reaffirm his or her parental duties after a period of time may well be detrimental to the child's welfare. The initial emotional harm caused by the abandonment could be compounded by an ephemeral parent-child relationship and subsequent deterioration and further abandonment. The court must determine if it is in the child's best interests to continue the parent-child relationship.

Lastly, we review the trial court's assessment of parental termination on the needs and welfare of the child. In this inquiry, we examine the record to determine whether the parent petitioning for termination, in this case, Wilt, made a clear showing that termination served the needs and welfare of the child. 23 Pa.Cons.Stat.Ann. § 2511(b). *In re Adoption of J.J., supra; In re Adoption of A.N.D.,* 360 Pa.Super. 157, 520 A.2d 31 (1986). We find no evidence of record that termination served the needs and welfare of the child, and we find no discussion on the part of the court that termination was in the best interests of the child.

■ The court must determine by a clear and convincing showing that termination of the parent-child relationship is in the best interests of the child. An essential inquiry is whether termination serves the needs and welfare of the

child. In *Harvey Adoption Case, supra,* the Supreme Court found that even if abandonment is proved, the court must consider whether the welfare of the child itself warrants granting of petitions to terminate. *Id.* 375 Pa. at 9–10, 99 A.2d at 280. Our Supreme Court in an incapacity/neglect case, stated that, "because of the importance placed on the family, the Commonwealth may disrupt the parent-child relationship only upon a clear showing of necessity." *In re Adoption of R.I.,* 468 Pa. 287, 293, 361 A.2d 294, 297 (1976), *cert. denied,* 429 U.S. 1032, 97 S.Ct. 722, 50 L.Ed.2d 743 (1977); *see also In Interest of C.W.,* 360 Pa.Super. 136, 142, 519 A.2d 1030, 1033 (1987), (citing *In re Interest of C.M.E.,* 301 Pa.Super. 579, 448 A.2d 59 (1982)).

■ We underscore that there is nothing in the record which suggests that termination of Hamilton's relationship with his daughter is necessary and that it would serve her needs and welfare. On the contrary, the record reveals that Hamilton's repeated petitions and assertions of visitation rights with Kristy since April 1985, have led to the resurgence of their father-daughter relationship.

In summary, we conclude that Wilt met the statutory requirement of showing that Hamilton evidenced for a period of more than six months a settled purpose of relinquishing his parental claim to Kristy and that Hamilton offered no evidence of extenuating circumstances. However, based on Hamilton's post-abandonment behavior and the failure of Wilt to show that needs and welfare of Kristy would be served by termination, we find the trial court abused its discretion in terminating Hamilton's parental rights.

Order reversed. Jurisdiction relinquished.

DEL SOLE, J., files a concurring statement.

DEL SOLE, Judge, concurring:

I join the majority. Here, while there was an abandonment, it apparently ended as evidenced by the parents' consent to a visitation order before the termination petition

was filed. Therefore, the trial court must examine evidence to determine the best interest of the child before terminating the father's rights. See 23 Pa.C.S.A. § 2511(b).