J-S02030-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: S.J.A.G., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: K.R., FATHER | No. 2213 EDA 2014 |

Appeal from the Decree entered June 26, 2014,
in the Court of Common Pleas of Philadelphia County, Family
Court, at No(s): CP-51-AP-0000070-2014, CP-51-FN-336485-2009

BEFORE:     MUNDY, OLSON, and WECHT, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED FEBRUARY 02, 2015**

K.R. ("Father") appeals from the decree dated and entered on June 26, 2014, that granted the petition filed by the Philadelphia County Department of Human Services ("DHS") to involuntarily terminate his parental rights to his minor child, S.J.A.G., a female born in February 2004, ("Child"), pursuant to section 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).  The decrease also changed the permanency goal for Child to adoption pursuant to 42 Pa.C.S.A § 6351, without further notice or consent from Father.[1]  We affirm.

The trial court ably set forth the factual background and procedural posture of this appeal.  As the trial court stated:

---

[1]  The trial court also involuntarily terminated the parental rights of Child's Mother, D.D.G. a/k/a D.G. ("Mother"), and the unknown father to Child in separate decrees dated and entered on June 26, 2014.  Neither Mother nor the unknown father has filed an appeal, nor is either one a party to this appeal.  The trial court expressly stated that, in the June 26, 2014 decrees, it changed Child's permanency goal to adoption.  Trial Court Opinion, 9/8/14, at 6.

[Child was] born [in] February [] 2004.

On September 10, 2006, [DHS] substantiated a [general protective services] report which alleged that [M]other left [Child] in the family home alone for approximately [ten] hours without any adult supervision. The report also alleged [that M]other left [Child] in the home alone frequently.

On March 22, 2011, DHS received a child protective services report alleging [that Father had purposefully injured Child]. It was alleged that [Child] stated she had pain in her arms and legs. It was alleged that [F]ather had taken [Child] to the emergency room of Albert Einstein Medical Center [] for chemical exposure. [Child] made statements to the hospital staff that she was suffering from pain. [Child] expressed that she was fearful of [Father]. It was alleged that [F]ather's home was filthy and that the police had been to the home due to drug activity. The report also alleged that [M]other and [F]ather shared custody of [Child]. . . . The report was indicated.

DHS transported [Child] and [Mother] to Children's Hospital of Philadelphia [("CHOP")] to have x-rays and a physical examination. CHOP diagnosed [Child] with a wrist sprain and a foot contusion. DHS learned [that Mother] had been convicted of [] endangering the welfare of a child in 2010. [Child] was discharged from the hospital to the care of her godfather[.]

On March 23, 2011, [F]ather came to DHS and stated that he had attempted to file for emergency custody of [Child]. [F]ather denied the allegations of the report and stated that [Child's] injuries were self-inflicted. Furthermore, [F]ather stated that [M]other told [Child] to accuse him of abuse. . . .

On March 23, 2011[,] DHS obtained an order of protective custody [] for [Child] and placed [Child] in a foster home setting through Delta Community Supports.

The DHS investigation revealed that [M]other had a history of mental health issues and was diagnosed as suffering from depression.

J-S02030-15

A shelter care hearing was held on March 25, 2011 before [a juvenile master].  The [master] lifted the [order of protective custody] and ordered the temporary commitment to stand.  Mother and [F]ather did not attend the court hearing.

On April 25, 2011, a Family Service Plan [("FSP")] meeting was held by [DHS].  The [FSP] objectives for [M]other were (1) to stabilize her mental health[] and (2) to obtain legal assistance for the criminal charges.  The [] objectives for [F]ather were (1) to participate in mental health and drug/alcohol evaluations, (2) [to participate in] anger management classes[,] and (3) to provide adequate and safe living conditions.  [M]other participated in the FSP meeting.  [F]ather did not participate in the FSP meeting.

An adjudicatory hearing was held on August 17, 2011, before the Honorable Donna Woelpper.  Judge Woelpper adjudicated [C]hild dependent and [committed] her to DHS.  [F]ather did not attend the hearing.

On September 23, 2011, DHS held an FSP meeting.  The additional FSP objective identified for [F]ather was that he learn and understand how [Child] was injured.  Father participated in the FSP meeting.

A permanency review hearing was held on December 22, 2011, before Judge Woelpper.  The [trial c]ourt referred [F]ather to Behavioral Health System for appropriate services.  [F]ather did not attend the court hearing.

The matter was then listed on a regular basis before the Honorable Jonathan Q. Irvine . . . pursuant to Section 6351 of the Juvenile Act . . . and evaluated for the purpose of determining or reviewing the permanency plan of [C]hild with the goal of reunification of the family.

Trial Court Opinion, 9/8/14, at 1-2 (some internal capitalization omitted).

On January 30, 2014, DHS filed a petition to involuntarily terminate the parental rights of Father, Mother, and the unknown father of Child.  On

- 3 -

April 4, 2014, the trial court held an evidentiary hearing on the termination/goal change petition. At the request of Mother's counsel at the outset of the hearing, the court declared that an additional day of testimony would be held on June 26, 2014, so that the trial court could hear testimony and receive documentary evidence with regard to the termination of Mother's parental rights.

At the hearing on April 4, 2014, DHS presented the testimony of Jennifer Robinson, its caseworker assigned to the case. N.T. Hearing, 4/4/14, at 5. DHS then presented the testimony of Rebecca Freking, the trauma therapist from Children's Crisis Treatment Center ("CCTC"), who had been Child's treating therapist since December of 2012. *Id.* at 21. Next, DHS presented the testimony of Ismael Jiminez, a DHS employee. *Id.* at 42-43. Father then testified on his own behalf. *Id.* at 59.

Although Mother was present at the hearing on April 4, 2014, she did not appear at the hearing on June 26, 2014; however, her counsel was present on June 26, 2014. At the close of the testimony regarding the termination of Mother's parental rights, the trial court terminated Mother's parental rights on the record. On that same date, June 26, 2014, the trial court entered the decree terminating Father's parental rights.

On July 24, 2014, Father filed a notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

In his brief on appeal, Father raises the following issues:[2]

1. Did the court below err in finding that DHS had met its burden in proving grounds under 23 Pa.C.S.A. § 2511(a)(1),(2), (5) and (8)?

2. Did the court below err in finding that DHS had met its burden to prove that termination would be in [C]hild's best interests, under [Section] 2511(b)?

3. Did the court below err in failing to find that DHS had neglected to make reasonable efforts to reunify Father with [Child]?

4. Did the court below err in denying Due Process of Law to [Father], as guaranteed by the Constitutions of the United States [of America] and of the Commonwealth of Pennsylvania?

Father's Brief at 4.[3]

We review an appeal from the termination of parental rights in accordance with the following standard.

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the

---

[2] For ease of discussion, we have reordered Father's claims on appeal.

[3] In his brief, Father changed the wording of the issues raised in his concise statement errors complained of on appeal somewhat, but we find that he preserved his issues for our review. *See **Krebs v. United Refining Company of Pennsylvania**, 893 A.2d 776, 797 (Pa. Super. 2006) (stating that any issue not set forth in or suggested by an appellate brief's statement of questions involved and concise statement is deemed waived). However, Father failed to develop, in his brief, any claim of error concerning the goal change to adoption. Thus, we conclude that Father has waived any claim that the trial court erred in changing Child's goal to adoption.

record. ***In re: R.J.T.***, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.

As [the Pennsylvania Supreme Court] discussed in ***R.J.T.***, there are clear reasons for applying an abuse of discretion standard of review in these cases. [The Supreme Court] observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. ***R.J.T.***, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

***In re Adoption of S.P.***, 47 A.3d 817, 826-27 (Pa. 2012) (some internal citations omitted).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. ***In re R.N.J.***, 985 A.2d 273, 276 (Pa. Super. 2009).

Moreover, we have explained:

[t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear

> conviction, without hesitance, of the truth of the precise facts in issue."

***Id.***, *quoting **In re J.L.C.***, 837 A.2d 1247, 1251 (Pa. Super. 2003).

Father argues that the trial court erred when it involuntarily terminated his parental rights under section 2511(a)(1), (2), (5), and (8), because the decision was not supported by clear and convincing evidence. With regard to section 2511(a), in general, Father contends that DHS thwarted his efforts to maintain his relationship with Child. Father claims that there was no evidence that he had a settled purpose, refusal, or failure to be a parent under section 2511(a)(1). With regard to section 2511(a)(2), he asserts that it is by the choice of DHS, not his own choice, that the conditions and causes of his incapacity, neglect or refusal to parent Child will not be remedied. Further, with regard to section 2511(a)(5), he alleges that it was DHS's fault that the conditions that led to Child's removal from his care and custody and placement in foster care continue to exist. With respect to section 2511(a)(8), Father asserts that there is confusion as to whether the trial court terminated his parental rights because the conditions that existed at the time of Child's placement still existed at the time of the hearing, or based on conditions that arose at a later time.

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en*

*banc*). Here, we will focus on section 2511(a)(2), as discussed by the trial court in its Rule 1925(a) opinion.

Section 2511 provides, in relevant part, as follows:

§ 2511. Grounds for involuntary termination

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . .

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . .

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

We have stated:

In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse,

neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (internal citations omitted).

Our Supreme Court set forth our inquiry under section 2511(a)(2) as follows.

> As stated above, § 2511(a)(2) provides statutory grounds for termination of parental rights where it is demonstrated by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent."[].

> [The Pennsylvania Supreme] Court has addressed incapacity sufficient for termination under § 2511(a)(2):

>> A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity. The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.

> *In re Adoption of J.J.*, 515 A.2d 883, 891 (Pa. 1996), *quoting* *In re: William L.*, 383 A.2d 1228, 1239 (Pa. 1978).

*In re Adoption of S.P.*, 47 A.3d at 827.

The trial court found as follows:

The court found by clear and convincing evidence that [F]ather failed to perform his parental duties. Furthermore, the testimony of the social worker established that [F]ather has untreated mental health needs. Moreover, the testimony stated that [F]ather did not comply with permanency plan for [Child]. Additionally, [F]ather did not comply with his mental health treatment. Lastly, the testimony established that [F]ather did not provide documentation of his completion of a drug/alcohol treatment program.

A parent has an affirmative obligation to act in his child's best interest. As stated in **Adoption of Hamilton**, [549 A.2d 1291, 1295 (Pa. Super. 1988)], "to be legally significant, the contact must be steady and consistent over a period of time, contribute to the psychological health of the child, and must demonstrate a serious intent on the part of the parent to recultivate a parent-child [relationship], and must [also] demonstrate a willingness and capacity to [undertake] the parental role." . . .

In the instant matter, [Child] has been in care for over [37] months. The testimony established [that Child] is in a stable environment and [that] adoption [is] in the [Child's] best interest[s]. Furthermore, the testimony established that [Child] had symptoms of anger and anxiety due to the history of her exposure to [F]ather's chronic mental illness. Moreover, [Child] was a victim of physical abuse by [F]ather. Additionally, the testimony revealed that [Child] had been diagnosed with ADHD[] and PTSD [and that she was suicidal]. The testimony established that [F]ather did not comply with his mental health treatment programs. [F]ather denied he was the perpetrator of the physical abuse of [Child]. Lastly, the testimony revealed that [F]ather did not have a plan of how to provide safety or stability for [Child].

Section 2511 (a)(2) requires that "repeated and continued incapacity, abuse neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for her physical or mental well being and the condition and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." 23 Pa.C.S.A. § 2511(a)(2)[.] These grounds

are not limited to affirmative misconduct. They may include acts of refusal to perform parental duties but more specifically on the needs of the child. ***Adoption of C.A.W.***, 683 A.2d 911, 914 (Pa. Super. 1996)[.]

Courts have further held that the implications of a parent's limited success with services geared to remedy the barriers to effective parenting can also satisfy the requirements of § 2511(a)(2). . . .

The testimony established that [F]ather did not demonstrate the desire or ability to raise a child[.] Furthermore, the testimony revealed that [F]ather refused to obtain appropriate housing for [Child]. Moreover, the testimony revealed that [F]ather did not want [C]hild to receive mental health treatment. Lastly, the testimony stated that [F]ather refused to sign the required paperwork for [Child] to receive mental health treatment[.]

Trial Court Opinion, 9/8/14, at 4 (some internal citations omitted).

After a careful review of the record in this matter, we find there is competent evidence in the record that supports the trial court's credibility and weight assessments regarding section 2511(a)(2). There is competent evidence in the record that supports the trial court's finding that Father has failed to comply with the permanency plan for Child. There is also competent evidence that supports the trial court's finding that Father is incapable of parenting Child because he continues to have mental health issues without complying with his treatment, lacks appropriate housing for Child, and lacks the parental skills and desire to raise a child. ***See*** Trial Court Opinion, 9/8/14, at 4. The competent evidence in the record also supports the trial court's finding that Father has refused to sign the paperwork necessary for Child to receive mental health treatment because

- 11 -

he does not want her to have treatment, and has inappropriately denied that he was the perpetrator of physical abuse on Child. *Id.* at 4-5. Finally, there is competent evidence that supports the trial court's conclusion that the conditions that led to Child's removal still exist, and will not be remedied by Father in the future. We find no reason to disturb the trial court's credibility determinations. *See In re Adoption of S.P.*, 47 A.3d at 826-27. Accordingly, we conclude that the trial court did not abuse its discretion in terminating Father's parental rights under section 2511(a)(2).

Next, Father argues, under section 2511(b), that DHS failed to show by clear and convincing evidence that the bond between Father and Child has been broken, and that the needs and welfare of Child would be best served by the termination of Father's parental rights.

In reviewing the evidence in support of termination under section 2511(b), our Supreme Court stated as follows.

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

Under section 2511(b), the trial court found as follows:

> In the instant matter, the testimony established that [C]hild would not suffer any irreparable emotional harm if [F]ather's parental rights were terminated. The testimony established that [Child] repeatedly expressed that she did not want any contact with [F]ather. Furthermore, the testimony of the social worker revealed that [Child] had not had contact with [F]ather since April 2012[.] Moreover, [C]hild's therapist testified that [Child] did not want to reunify with [F]ather. Therefore, [Child] did not have an opportunity to bond with [F]ather due to the lack of contact with him. Lastly, the testimony revealed [that Child] has bonded with her foster parents. [Child] refers to her foster parents as "mom and dad" and their child as her little sister. [Child] has a positive relationship with her foster parents and expressed feelings of stability and consistency.

Trial Court Opinion, 9/8/14, at 5-6 (internal citations omitted).

We have stated that, in conducting a bonding analysis, the court is not required to use expert testimony, but may rely on the testimony of social workers and caseworkers. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). This Court has observed that no bond worth preserving is formed between a child and a natural parent where the child has been in foster care for most of the child's life, and the resulting bond with the natural parent is attenuated. *In re K.Z.S.*, 946 A.2d 753, 764 (Pa. Super. 2008). It is appropriate to consider a child's bond with her foster parents. *See In re: T.S.M.*, 71 A.3d at 268.

The testimony of the DHS witnesses established that Child has no bond with Father, and that she has a positive bond with her foster parents who wish to adopt her into their family, where Child is happy. N.T. Hearing,

4/4/14, at 19, 37, and 48. While Father may love Child, he has failed to demonstrate that he is capable of parenting Child. N.T. Hearing, 4/4/14, at 12-13 and 69. This Court has stated that a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. *In re Z.P.*, 994 A.2d at 1121. We, thus, find that competent evidence exists, supporting the finding that there is an absence of a bond with Father, which, if severed, would harm Child. Trial Court Opinion, 9/8/14, at 5-6.

Next, we address Father's interrelated claims that the trial court abused its discretion in failing to find that DHS had neglected to make reasonable efforts to reunify Father with Child, and that Father was denied his constitutional guarantee to due process of law because the trial court terminated his parental rights to Child. Our Supreme Court has expressly rejected the contention that reasonable efforts are necessary to support a termination decree under section 2511(a)(2). *See In re D.C.D.*, ___ A.3d ___, 2014 WL 7089267 (Pa. 2014).

In *D.C.D.*, the Court analyzed the language of section 2511(a)(2), as well as section 6351 of the Juvenile Act, 42 Pa.C.S.A. § 6351. The Court reasoned that, while "reasonable efforts may be relevant to a court's consideration of both the grounds for termination and the best interests of the child," neither of these provisions, when read together or individually, requires reasonable efforts. *Id.* at *26-27 and *8-9 (citation omitted). The Court also concluded that reasonable efforts were not required to protect a

parent's constitutional right to the care, custody, and control of his or her child. *Id.* at *37-39, 10-11.

Further, in the case at bar, Father cannot shift his failings to comply with the permanency plan to DHS. Certainly, it was Father – and Father alone – who failed to remedy his substantial mental health issues; who continues to reside in inappropriate housing; who refuses to acknowledge, admit to, or apologize for the physical harm he inflicted upon Child; who refused to provide DHS with documentation regarding whether he completed a drug and alcohol treatment program; and, who would continue to harm Child by denying her necessary mental health treatment.

We conclude that the trial court did not abuse its discretion in finding competent evidence to support the termination of Father's parental rights under section 2511(b). *See In re Adoption of S.P.*, 47 A.3d at 826-27. Accordingly, we affirm the decree terminating Father's parental rights to Child, and changing Child's permanency goal to adoption.

Decree affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/2/2015