J-S60017-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF:  D.R.S.C., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  S.C., MOTHER | No. 1091 EDA 2015 |

Appeal from the Order Entered March 24, 2015
In the Court of Common Pleas of Chester County
Orphans' Court at No(s): AD-2014-0051

BEFORE:  BENDER, P.J.E., LAZARUS, J., and OTT, J.

MEMORANDUM BY LAZARUS, J.:                **FILED OCTOBER 14, 2015**

S.C. (Mother) appeals from the trial court's order involuntarily terminating her parental rights[1] to her minor son, D.R.S.C (born 11/2003). Mother's counsel has also filed an application to withdraw pursuant to *In Re: Adoption of V.E.*, 611 A.2d 1267 (Pa. Super. 1992).  After careful review, we affirm and grant counsel's petition to withdraw.

Chester County Department of Children, Youth and Families (CYF) removed D.R.S.C. from Mother and Father's[2] care for two relevant periods,

---

[1] We review a trial court's decision to involuntarily terminate parental rights for an abuse of discretion or error of law.  *In re A.R.*, 837 A.2d 560, 563 (Pa. Super. 2003).  Our scope of review is limited to determining whether the trial court's order is supported by competent evidence.  *Id.*  Therefore, even where the facts could support an opposite result, as is often the case in termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment. *In re Adoption of Atencio*, 650 A.2d 1064, 1066 (Pa. 1994).

[2] Father's parental rights to D.R.S.C. have also been involuntarily terminated.  However, he is not a party to this appeal.

November 2010-August 2011 and April 2013[3]-present.[4] D.R.S.C.'s removal was a result of unsafe housing conditions and poor parental judgment. Specifically, Mother has a history of mental health problems, including emotional instability, and had been the victim of domestic violence at the hands of Father. CYF provided Mother numerous services to address the concerns that led to D.R.S.C.'s placement, including in-home services, family preservation and intervention services, housing assistance, life skill services, counseling, and family group decision making courses.

While Mother did attend all supervised visits with D.R.S.C., she made minimal to no progress toward her initial goal of reunification and, as a result, CYF filed its petition to terminate her parental rights on July 10, 2014. After two days of termination hearings held on February 12, 2015 and March 17, 2015, the trial court involuntarily terminated Mother's parental rights to D.R.S.C. pursuant to 23 Pa.C.S. §§ 2511(a)(1), (2), (5), (8), and (b). Specifically, the court determined that: (1) Mother had made minimal progress toward alleviating the circumstances that led to D.R.S.C.'s

---

[3] Removal from the home was precipitated by Mother being evicted and having to live in her truck, as well as D.R.S.C. not being properly cared for. N.T. Termination Hearing, 2/12/15, at 22-23, 51.

[4] CYF has been involved with Mother and Father and their other children, T.F.C., III (age 17), and C.C (age 15), continuously since November 2009 – years before D.R.S.C. was even born. Father's history of substance abuse, domestic violence and poor judgment combined with Mother's history of mental instability and inadequate parenting caused CYF to place T.F.C., III, and C.C. in foster care.

placement; and (2) termination would best serve the needs and welfare of D.R.S.C. Although the court recognized that Mother and D.R.S.C. have a bond, testimony revealed that the bond was unhealthy and that the damage of leaving the bond intact would cause more harm to D.R.S.C. than if the bond were severed. N.T. Termination Hearing, 2/12/15, at 66. Finally, and most impactful on the court, was Mother's "continuing lack of insight after all this time . . . as to why her parental rights should be terminated." Trial Court Opinion, 3/23/15, at 8.

This timely appeal follows, in which counsel seeks to withdraw from representation. In **V.E.**, **supra**, our Court held:

> Counsel appointed to represent an indigent parent on a first appeal from a decree involuntarily terminating his or her parental rights, may, after a conscientious and thorough review of the record, petition the court for leave to withdraw representation if he or she can find no issues of arguable merit on which to base the appeal. Given the less stringent standard of proof required and the quasi-adversarial nature of a termination proceeding in which a parent is not guaranteed the same procedural and evidentiary rights as a criminal defendant, appointed counsel seeking to withdraw representation must submit an advocate's brief.

611 A.2d at 1275. In **In re Adoption of V.G.**, 751 A.2d 1174 (Pa. Super. 2000), our court reiterated the requirements counsel must satisfy before being permitted to withdraw in termination appeals: (1) petition the court for leave to withdraw stating that after making a conscientious examination of the record and interviewing the defendant, counsel has determined the appeal would be frivolous, (2) file a brief referring to any issues in the record of arguable merit; and (3) furnish a copy of the brief to defendant and

advise him of his right to retain new counsel or raise any additional points he deems worthy of this Court's review. *Id.* at 1176.

Instantly, counsel has complied with the three prongs outlined in *V.G.* While counsel's brief is somewhat sparse in argument and case law,[5] it does reference issues[6] of arguable merit. Therefore, we find it substantially complies with the withdrawal requirements. *Commonwealth v. Wrecks*, 934 A.2d 1287 (Pa. Super. 2007) (substantial compliance is sufficient to satisfy withdrawal on appeal).

Moreover, based on our own independent review of the record, including the notes of testimony from the termination hearings, relevant case law and the trial court opinion, we agree with counsel's assessment that any appeal would be frivolous. We rely upon the decision authored by the Honorable Mark L. Tunnell to affirm the order terminating Mother's parental rights to D.R.S.C. under sections 2511(a) and (b) and advise the

---

[5] We recognize that counsel's brief is an advocate's brief, as opposed to counsel's brief in *V.G.*, which our court deemed "wholly inadequate" as it resembled a "no-merit" letter. 751 A.2d at 1177. Notably, however, our Court in *V.G.* did not remand for counsel to file a proper advocate's brief where "our independent review of the record indicate[d] that, in fact, appellant ha[d] no issues of arguable merit on which she c[ould] base an appeal." *Id.*

[6] Specifically, those arguably meritorious issues include the demonstrated bond between Mother and D.R.S.C. and the lack of a formal bonding assessment as it relates to a section 2511(b) analysis and Mother having obtained appropriate housing and maintained stable employment, in addition to several other completed services, in compliance with CYF's service plan.

parties to attach a copy of Judge Tunnell's decision in the event of further proceedings in the matter.

Order affirmed.  Counsel's petition to withdraw granted.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/14/2015

C

# IN THE COURT OF COMMON PLEAS, CHESTER COUNTY, PENNSYLVANIA
## ORPHANS' COURT DIVISION

IN RE: D.R.S.C.

FILE NO. AD-14-0051

## FINAL DECREE

AND NOW, to wit, this 23rd day of March, 2015, upon consideration of the Petition and hearing had thereon,

The court finds that **Stephanie Corum**, by conduct continuing for a period of at least six (6) months, has evidenced a settled purpose of relinquishing parental claim to the child, or has refused or failed to perform parental duties pursuant to 23 Pa. C.S.A. §2511(a)(1); and

The court further finds that the repeated and continued incapacity, neglect or refusal of the said **Stephanie Corum** has caused the said minor child to be without essential parental care, control or subsistence necessary for the child's physical and mental well-being and the conditions and causes of the incapacity, neglect or refusal cannot or will not be remedied by the said parent pursuant to 23 Pa. C.S.A. §2511(a)(2); and

The court further finds that the child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six (6) months, the conditions which led to the removal or placement of the child continue to exist, and the parent cannot or will not remedy those conditions within a reasonable period of time. The services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and

termination of the parental rights would best serve the needs and welfare of the child pursuant to 23 Pa. C.S.A. §2511(a)(5); and

The court further finds that the child has been removed from the care of the parent by a court or under a voluntary agreement with an agency, twelve months or more have lapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child pursuant to 23 Pa. C.S.A. §2511(a)(8).

IT IS ORDERED, ADJUDGED and DECREED that the Petition of Chester County Department of Children, Youth and Families for the termination of parental rights of **Stephanie Corum**, the natural mother of **D.R.S.C.**, is granted, and that all parental rights and duties of **Stephanie Corum** in respect to **D.R.S.C.** is hereby awarded to Chester County Department of Children, Youth and Families which is hereby authorized to give consent to the adoption of said child and adoption of said child may be decreed without further consent of or notice to the aforesaid parent. Further, pending finalization of adoption, the Chester County Department of Children, Youth and Families shall stand *in loco parentis* to the child and in such capacity shall have the authority, *inter alia*, to consent to major medical, psychiatric and surgical treatment, make educational decisions and to exercise such other authority concerning the child as a natural parent could exercise.

BY THE COURT:

**CERTIFIED**
From the Record
This date: MARCH 24, 2015
Attest: _____
Assistant Clerk of Orphans' Court
Chester County, PA

M. Tunnell
_____
Mark L. Tunnell,          J.

2015 MAR 23  PM 3:09
FILED CLERK OF ORPHANS' COURT
CHESTER COUNTY, PA.

IN THE COURT OF COMMON PLEAS, CHESTER COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

IN RE: D.R.S.C.

FILE NO. AD-14-0051

## DECISION

D.R.S.C. was adjudicated dependent in Juvenile Dependency Court in April 2013 and has been in foster care for the nearly two (2) years since then. Chester County Department of Children, Youth and Families ("CYF") has worked intensively with his parents, but at a recent review hearing CYF sought and was granted a goal change from reunification to a new permanent living arrangement.

On July 10, 2014, CYF started this case, filing petitions to terminate the parental rights of D.R.S.C.'s mother and father. The parents contested these proceedings, asserting that CYF had not met its burden of proof. Alternatively, they offered evidence of a strong bond between D.R.S.C. and his mother and, to some extent, his father, and argued that it would not be in the child's best interests to terminate parental rights.

What the Supreme Court calls "the clock of childhood" is ticking.

The court will terminate the parental rights of both parents, based on the following:

## FINDINGS OF FACT

1. D.R.S.C. is a male minor child, born November 7, 2003; he is eleven (11) years old.

2. D.R.S.C.'s parents are S.D.C. ("Mother") and T.F.C., Jr. ("Father").

1

3. D.R.S.C. has two siblings, T.F.C., III (age 17) and C.C. (age 15).

4. Although CYF has been involved with this family since 1999, D.R.S.C. has been in foster care through CYF for two blocks of time; from November 22, 2010, to August 18, 2011, and from April 11, 2013, to the present.

5. D.R.S.C.'s two siblings are also in CYF foster care, although the dates of their placements do not exactly correspond to D.R.S.C.'s dates of placement.

6. Mother has a history of mental health problems, including emotional instability and issues with domestic violence, inadequate parenting, household management and housing.

7. Father has a history of substance abuse, unemployment, domestic violence, criminal violations, poor judgment and housing issues.

8. These problems caused D.R.S.C. and his two brothers to be placed in CYF foster care, most recently in April 2013.

9. For years CYF has provided Mother and Father with numerous services to address the issues that led to D.R.S.C.'s placement in foster care, including but not limited to, in-home services, family preservation services, family intervention services, life skills services, individual counseling, family group decision making, housing assistance, and family finding services, as well as regular contact with caseworkers from CYF and affiliated contract service providers.

10. Despite these services, Mother and Father have made minimal progress towards alleviating the circumstances which necessitated the child's placement.

11. D.R.S.C. has been adjudicated dependent in proceedings in the Juvenile Dependency Court at #CP-15-51-2010.

2

12. What Mother and Father needed to do to regain custody of D.R.S.C. was spelled out and explained to Mother and Father by CYF caseworkers through, inter alia, periodic family services plans, as well as through the various hearings and orders of the Juvenile Dependency Court. *See* (Ex. CYF-2.)

13. The Juvenile Court determined that Mother and Father have made "no" or "minimal" progress toward the initial goal of reunification with D.R.S.C. (*Id.*)

14. In 2014, Mother appealed an order of the Juvenile Court to the Superior Court (since discontinued by Mother). In an opinion pursuant to Pa.R.A.P. 1925(a), dated June 16, 2014, the Honorable Anne Marie Wheatcraft, Juvenile Court judge, found that:

> Mother has no insight as to how her behavior affects her children even after years of intensive services and weekly therapy. Mother avers she has made progress toward alleviating the conditions that first necessitated placement but even though she has consistently engaged in long-term weekly therapy and recovery programs there has been no improvement in her toxic behavior that causes emotional and psychological harm to her children.

(Ex. Child-1 (Opinion of 6/16/14 at pp. 6-7).)

15. Two caseworkers from CYF gave evidence in this case that neither parent made any real progress toward alleviating the conditions which led to D.R.S.C.'s placement in foster care.

16. Father was arrested on or about October 20, 2014, for driving under the influence. He pled guilty on January 13, 2015, to at least his second driving under the influence charge and is awaiting sentencing. (Ex. CYF-1 (Docket No. 3604-2014).)

17. There is a bond between D.R.S.C. and both Mother and Father; however, it is not a healthy bond.

3

18. Severing the bonds between D.R.S.C. and his parents through termination of parental rights will do less harm to D.R.S.C. than maintaining them.

19. D.R.S.C. has thrived in his foster home, and his earlier aggression and acting out have been ameliorated.

20. D.R.S.C. is an adoptable child.

21. His court appointed counsel adopts the proposed Findings of Fact and Conclusions of Law filed by CYF.

## DISCUSSION

The grounds for involuntary termination of parental rights are set forth in the Adoption Act, 23 Pa. C.S.A. §2101, et seq. CYF seeks termination based on the following:

Section 2511. Grounds for involuntary termination

(a) General Rule – The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidence a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a

4

period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

The Pennsylvania Supreme Court has stated that there is no simple or easy definition of "parental duties". Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance and support. The parental obligation is a positive duty which requires affirmative performance. *In re Burns*, 474 Pa. 615, 379 A.2d 535 (1977). A parent must exert himself or herself to take and maintain a place of importance in the child's life. *Id.*

Parental rights may not be terminated in the absence of evidence which is clear and convincing. Even when it is established that a parent has failed to perform parental duties for a period in excess of six (6) months, such a finding does not in and of itself support an order terminating parental rights. Instead, the court must then examine the individual circumstances and any explanation offered by the parents to determine if that evidence, in light of the totality of the circumstances, clearly warrants permitting the involuntary termination of said parents' parental rights. A court in terminating the rights of a parent shall give primary consideration to the needs and welfare of the child. 23 Pa. C.S. §2511(b). Judicial inquiry is thus to be centered

5

on the best interests of the child rather than the fault of the parent. *In re Adoption of J.J.*, 511 Pa. 590, 515 A.2d 883 (1986).

In summary, in Pennsylvania when involuntary termination is sought the court first determines if the statutory requirements in §2511(a) have been satisfied. If they have, the court assesses any explanation or extenuating circumstances made by the parent. Next, the court evaluates ay post-abandonment contact between the parent and child, and lastly and most importantly the court assesses the effect of termination on the needs and welfare of the child. *In re Adoption of Hamilton*, 379 Pa. Super. 274, 549 A.2d 1291 (1988).

Caseworkers familiar with D.R.S.C. and his family testified about the long and rather sordid behaviors of Mother and Father that brought them into contact with CYF going back to 1999, four (4) years before D.R.S.C. was even born.

Those behaviors ebbed and flowed. The court listened to testimony about the parents' issues, and the negative impact they had on D.R.S.C. The testimony of the caseworkers is amply supported by the orders in the dependency proceedings. Judge Wheatcraft summed up succinctly as follows:

> This family has been involved with CYF continuously since November 2009 and had previously received CYF services and then had been closed. The current case was initially opened in 2009 due to reports of Timothy Corum, Sr. ("Father") being intoxicated, threatening suicide, and choking Mother in presence of the children. Extensive in-home services were provided to the family but the children continued to be in an unsafe environment and were placed in foster care in November 2010. CYF worked with the family intensively and reunification occurred in August 2011. In April 2013 the children were taken from the home again due to issues of on-going violence in the home, Father's continued alcoholism, Mother's lack of housing, and her inability to keep the children safe.

6

\* \* \*

> In this matter, CYF petitioned to change the goal from reunification with Mother to another planned permanent living arrangement as none of the other permanency options are currently feasible for these children. We agreed a change in goal was appropriate and the petition was granted. Of course that change is not made lightly, but the long and intensive history of this case makes it appropriate.

(Ex. Child-1 (Opinion of 6/16/14 at pp. 6-7).)

Mother and Father counter by pointing out the items that they did manage to accomplish, and then for those reasons urge the court that CYF has not proven its case against them.

For example, Mother and Father attended all visits with D.R.S.C. and acted "appropriately" with him. In recent months, Father has attended AA meetings and is working with his sponsors. Both sponsors testified in court about the marked improvement in Father's behavior and his commitment to recovery. On the other hand, he was arrested for DUI after these proceedings had begun, has pleaded guilty and is awaiting sentencing. While the court understands that recovering alcoholics do "slip", this conduct belies the Father's current arguments.

Mother points out the numerous ways in which she feels she has been compliant with service plans. Unfortunately, no measurable progress towards reunification could be seen. Towards the end of her testimony in court, Mother stated that she "doesn't know why her children are still in placement", that she has "lost everything", and that she doesn't know why her behavior has been as "impactful" on her children as described in various dependency orders.

7

The court was amazed. Mother's continuing lack of insight after all this time is a chief factor in the court's mind as to why her parental rights should be terminated.

Although not contained in the packet of dependency orders presented to the court and admitted as Ex. CYF-2, this court has taken judicial notice of the most recent Permanency Review Order dated February 5, 2015 concerning D.R.S.C. Judge Wheatcraft found that there was "minimal compliance" by the Mother and Father with regard to a permanency plan and "no progress" by Mother and Father "towards alleviating the circumstances which necessitated D.R.S.C.'s original placement."

D.R.S.C. has an emotional bond with Mother. He is worried about her, even "scared" for her. The court was asked to watch a videotape of D.R.S.C. made over a year ago wherein he cries that he misses her. Frankly, the court faults the Mother for the derelictions that put her son in this pathetic and unhealthy position.

D.R.S.C. does not want to be adopted. He seems happy and healthy in his foster home.

Where an agency is petitioning for termination of parental rights it is not necessary for the agency to demonstrate a pending adoption nor that a person with a present intention to adopt exists. 23 Pa. C.S.A. §2512(b).

Perpetuating the birth parents' involvement despite their inability to care for a child could in fact foreclose any hope for adoption. *In the Matter of T.D.*, 949 A.2d 910, (Pa. Super. 2008). The parents argue here as they did in Juvenile Court that D.R.S.C. maintains a bond with mother. They urge that the court should consider this pursuant to §2511(b) of the Adoption Act which requires courts to give primary consideration to the developmental, physical and emotional needs and welfare of the child when considering a termination petition.

8

The statute does not provide any guidance as to how the court is supposed to evaluate those considerations, nor does it mention the word "bond."

The court is concerned that keeping a child unavailable for adoption or another permanent living arrangement on account of an unhealthy or even pathological bond with an abusive or neglectful parent most certainly does not serve the needs and welfare of the child. Where the mother's abusive or neglectful parenting has created a pathological bond in the child, she should not be heard to say that the bond should be preserved lest further harm result to the child. The Supreme Court in *In Re T.S.M.*, 620 Pa. 602, 71 A.3d 251 (2013), grappled with these problems. It cited with approval a Superior Court decision in *In Re: K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008), recognizing that the mere existence of a bond of a child to a parent will not necessarily result in the denial of a termination petition. In the Superior Court decision, Judge Tamilia observed that it was "an immutable psychological truth" that even the most abused of children "will often harbor some positive emotion towards the abusive parent." The failure to correct parenting and behavioral disorders which are harming the children cannot, he said, be misconstrued as "bonding." *Id.* at 535.

Ultimately, the court must weigh the injury of breaking a child's bond to a biological parent against the damage that the bond may cause if the bond is left intact. The Supreme Court went on to observe in *T.S.M.* that:

> In weighing the difficult factors discussed above, courts must keep
> the ticking clock of childhood ever in mind. Children are young
> for a scant number of years, and we have an obligation to see to
> their healthy development quickly.

*T.S.M.* 620 Pa. at 631.

9

In *T.S.M.*, the Supreme Court reversed the decision of the trial court that denied the petition for termination because such denial "merely prolonged and, indeed, exacerbated the harm suffered by the children." *Id.* at 633. The Supreme Court concluded "without hesitation that it best serves their needs and welfare to sever their bond with Mother permanently in order to permit them to be placed forthwith into healthy, permanent homes." *Id.* at 634. This court believes no less is true at bar.

## CONCLUSIONS OF LAW

1. CYF filed Petitions to Terminate Parental Rights as to Mother and Father on July 10, 2014.

2. Mother and Father were served with the Petitions by constable on August 14, 2014.

3. Both parents were represented by counsel throughout this matter.

4. This Court has jurisdiction in this matter and venue is proper.

5. Both parents have failed to perform parental duties relative to D.R.S.C. for more than six (6) months immediately preceding the filing of the Petitions in this matter. 23 Pa.C.S.A. §2511(a)(1).

6. Both parents have repeatedly and continually demonstrated an incapacity to parent D.R.S.C. and, therefore, the child is without essential parental care, control or subsistence necessary for his physical or mental well-being, and the conditions and causes of that incapacity cannot or will not be remedied by the parents. 23 Pa.C.S.A. §2511(a)(2).

7. D.R.S.C. has been removed from the care of Mother and Father by the Juvenile Court for a period in excess of six (6) months, the conditions which led to the removal or

10

placement of the child continue to exist, the parents cannot or will not remedy those conditions within a reasonable period of time, the services and assistance provided to the parents have not remedied and will not remedy within a reasonable time the conditions which led to the removal and placement of D.R.S.C. for twenty-three consecutive months, and termination of parental rights best serves the needs and welfare of D.R.S.C. 23 Pa.C.S.A. §2511(a)(5).

8. D.R.S.C. has been removed from the care of Mother and Father by the Juvenile Court, more than twelve (12) months have passed since removal, the conditions which led to the removal and placement of D.R.S.C. continue to exist and termination of parental rights best serves the needs and welfare of D.R.S.C. 23 Pa.C.S.A. §2511(a)(8).

9. The developmental, physical and emotional needs and welfare of D.R.S.C. will be best served by termination of parental rights. 23 Pa.C.S.A. §2511(b).

10. CYF has met its burden of clear and convincing evidence relative to 23 Pa.C.S.A. §2511(a) and (b).

11. Termination of parental rights and, therefore, freeing D.R.S.C. for adoption or other permanent living arrangement are appropriate in the circumstances of this case.

An appropriate order follows.

BY THE COURT:

Date: March 23, 2015

_____
Mark L. Tunnell, J.

11