520 A.2d 31

**In re ADOPTION OF A.N.D.**

**Appeal of S.L.D.**

Superior Court of Pennsylvania.

Argued Oct. 1, 1986.

Filed Dec. 3, 1986.

Reargument Denied Jan. 26, 1987.

Suzanne Noble, Chester, for appellant.

Before CAVANAUGH, McEWEN and BECK, JJ.

BECK, Judge:

This is an appeal by the natural mother from a final order terminating her parental rights. We affirm.

While in the hospital, the natural mother initially consented to the adoption of Baby A., born December 1984. After leaving the hospital and learning she would only receive compensation for medical bills, she revoked her consent. She then cared for Baby A. for over six months, while staying with her current boyfriend's family and receiving their help. The record reveals that during this period, she did not show affection towards Baby A. and was anxious to let others take care of the Baby. On Easter 1985, she attempted to relinquish custody of Baby A. to the natural father who had denied paternity and was not supporting the child. She changed her mind again. In July, 1985, when forced to change residences, she made her third conscious decision to give up Baby A. She contacted a private inter-

mediary, an attorney, and demanded he arrange for an immediate adoption. He advised her fully of the consequences of her act and confirmed her awareness of alternative possibilities. She executed a consent to adoption on July 12, 1985. The next day, Baby A. was placed with appellees, the adoption couple.

Appellees filed their report of intention to adopt and petitioned to terminate the rights of the natural parents. The natural father had consented, and his rights were terminated. Appellant officially withdrew her consent on September 22, 1985, and requested custody and visitation. The court denied the request and ordered a home study, psychological and psychiatric evaluations. After hearing in January 1986, appellant's rights were terminated.

The home study focused on three areas: housing, employment and familial resources. The social worker determined there was no long-term stability in any of these areas. Although she found one familial resource, the family with whom appellant was residing, that family had asked appellant to leave the weekend before the hearing. At the time of hearing, appellant was twenty-two years old, pregnant, moving for the fourth time in a twelve-month period and had recently been fired from two jobs because of absences from work.

Dr. James Ewing, the court-appointed psychiatrist, diagnosed appellant's condition as a dependent personality disorder and possibly a passive-aggressive personality disorder. He testified that appellant currently lacked the capacity to parent. He further testified that there was a possibility, but not likelihood, of her developing the capacity after treatment for at least nine months to one year.

Dr. Robert Keller, the psychologist testifying for appellant, confirmed a personality disorder with passive aggressive features affecting appellant's current ability to parent. He believed that if appellant stayed in therapy, there was a fairly good chance that some of her substantial problems could be resolved.

The court-appointed guardian ad litem recommended termination. He determined that during the six months before the hearing, appellant had done nothing to remedy her situation. She had not initiated therapy or formulated a substantial plan for housing, working or care for Baby A. He also was concerned about appellant's potential to take care of Baby A. and the baby she was currently expecting.

The record reveals the court also considered other indicia of appellant's capacity and willingness to parent. She had a psychological history of emotional disturbance. Appellant was a victim of child abuse and had attempted suicide at least once. In October 1980, she married. At that time she was receiving psychiatric treatment. Later she moved to Canada with her husband and had two sons who are now in the custody of their father. In early 1981, she and her husband had marital counseling. During the next two years appellant had difficulty maintaining the house and raising two young sons. In early 1983, she negligently poisoned her younger, two-month old son. The baby, however, was not permanently harmed. The social worker who counseled the couple previously, intervened and gave appellant psychological therapy. A nutrition aide and a homemaker were assigned to help her in part with her parenting skills. The homemaker aided appellant for almost nine months but she made no progress. Despite therapy and help, appellant's parenting ability did not improve and she showed no potential for change. In December 1983, appellant returned to Pennsylvania where she resumed relations with Baby A.'s father and developed a drug abuse problem. She was shooting cocaine and smoking marijuana.

In the context of terminating parental rights, competing interests must be considered: that of the parents to raise the child as they see fit and that of the child to mature in a healthful environment. As a third party, the state has the dual interest in preserving family autonomy and in protecting children.

A child's biological parents have a blood-tie to the child that gives them first right in possession of the child. Ac-

companing that right is a duty or moral compact to provide reasonably for the physical and emotional well being of the child. Parents' rights to raise their children, however fundamental, do have limits. The child has a right to physical and emotional safety and is entitled, at least, to an environment conducive to proper development.

Children at an earlier time in the common law were viewed as property over which parents had total control. The enactment of termination statutes eroded that concept. The growing trend balances the rights of the parents against those of the child. If a parent's performance falls wide of the mark of providing a reasonably healthful psychological and physical environment, the right of the parent may be terminated.

The mediator between the parent and the child is the state and the state must weigh the integrity of the family against the protection of the child. In addition, the state has an independent interest; i.e. in having its citizens in the future be productive law-abiding members of society.

█ In deciding to terminate parental rights involuntarily, the court must be satisfied that the party seeking termination has established by clear and convincing evidence the existence of grounds for doing so. *Adoption of J.J.*, 511 Pa. 590, 593, 515 A.2d 883, 885 (1986), citing *Matter of Adoption of G.T.M.*, 506 Pa. 44, 483 A.2d 1355 (1984).

█ In reviewing a termination order, this court must employ a scope of review limited to a determination of whether the decision to terminate parental rights is supported by competent evidence. *Adoption of J.J.*, 511 Pa. at 593, 515 A.2d at 885. *See also, G.T.M.*, 506 Pa. 44, 483 A.2d 1355.

In the instant case, the court terminated appellant's parental rights pursuant to Sections 2511(a)(2) and 2511(b) of the Adoption Act, 23 Pa.Cons.Stat.Ann. §§ 2511(a)(2), 2511(b) (Purdon Supp.1986):

(a) **General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental wellbeing and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

(b) **Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

■ Appellant argues that it was appellees' burden to show all three elements of Section 2511(a)(2): incapacity or refusal to parent, resulting lack of essential parental care, and irremediability of the incapacity or refusal. Appellant further contends that these elements must be satisfied before considering Section 2511(b) which refers to the needs and welfare of the child. Appellant is correct in the formulation of the requirements but is incorrect in concluding that the trial court erred or abused its discretion. We will consider these arguments seriatim.

## I.

The first element required for involuntary termination of parental rights under Section 2511(a)(2) is the repeated and continued incapacity, abuse, neglect or refusal of the parent. In the instant case, there is no question that appellant currently lacks the capacity to take care of Baby A. This is the testimony of both the court-appointed psychiatrist and the psychologist testifying for appellant.

The court found that appellant not only lacked the current capacity to parent but that she also refused to take

care of Baby A. and that her current incapacity and refusal were repeated and continued.

The court also considered appellant's past incapacity. The court relied on appellant's past performance, both with Baby A. and with her two sons, now in the custody of their father. The court referred to her care of her sons as a trial period. We note that past incapacity alone is not a sufficient basis for finding present incapacity or refusal. *Matter of Adoption of Ferrante*, 334 Pa.Super. 53, 67, 482 A.2d 1076, 1084 (1984). The court in its formulation, however, combined past evidence of incapacity with a finding of current incapacity and refusal.

The court particularly reviewed the facts as they pertain to appellant's repeated and continued refusal. Salient facts include her attempting to give up Baby A. on several occasions. In addition, when she was in charge of Baby A. for six months her parenting skills were lacking. She did not show affection or adequately assume the role of caretaker. Of extreme significance is appellant's lack of planning to achieve even a minimal stability in regards to child care, housing and employment during the six months between the time appellant gave up Baby A. to appellees and the hearing.

We find sufficient evidence to support the court's findings that appellees met their burden under the standard of clear and convincing evidence.

## II.

The second condition delineated in Section 2511(a)(2) is that appellant's incapacity or refusal must "have caused the child to be without essential parental care, control or subsistence." 23 Pa.Cons.Stat.Ann. § 2511(a)(2) (Purdon, Supp.1986). However, this section does not "require a showing that a parent have an opportunity to inflict substantial harm upon the child when a parent has demonstrated a continued inability to conduct [her] life in a fashion that would provide for [her] child.... *See In Re Adoption of Michael J.C.*, 506 Pa. 517, 528, 486 A.2d 371, 373 (1984)

[Opinion Announcing the Judgment of the Court, McDermott, J., Larsen and Zappala, J.J. joining]; *In re William L.*, 477 Pa. 322, 383 A.2d 1228 (1978), *cert. denied* 439 U.S. 880 [99 S.Ct. 216, 58 L.Ed.2d 192] ... (1978)." *Adoption of Baby Boy J.*, 354 Pa.Super. 575, 582, 512 A.2d 689, 693 (1986).

The court concluded that appellant's repeated and continued refusal has caused Baby A. to be without the essential parental care necessary for her physical or mental well being. Upon review of the record, we find no abuse of discretion in this conclusion.

### III.

■ The third element of Section 2511(a)(2) requires appellees to show by clear and convincing evidence that appellant's incapacity or refusal cannot or will not be remedied. Appellant argues that there has been no showing of irremediability; and that, on the contrary, both the psychiatrist and the psychologist believed that appellant's capacity to parent would improve with therapy.

However, the court found that appellant's incapacity could not be remedied. Furthermore, the court found a refusal which would not be remedied. This determination was properly based on much more than the psychiatric and psychological testimony presented at the hearing.

Appellant had had psychiatric help before her marriage, and psychological help during her marriage. The support she received in Canada was in part to encourage the development of parenting skills. Yet these encounters were unproductive. This previous repeated lack of success in therapy is compounded by appellant's current lack of stability. These factors are predictive that appellant would not follow through with the therapy suggested by the expert witnesses. Another significant factor is that appellant made no attempt to help herself since changing her mind about giving up Baby A.

Although Dr. Ewing testified that appellant had a chance of improving after at least nine months to one year of therapy, he believed that her chance was a possibility, not a

likelihood. Furthermore, his prediction was premised on appellant's pursuing therapy, despite her past unsuccessful experiences with therapy.

Appellant relies on *Interest of C.M.E.*, 301 Pa.Super. 579, 448 A.2d 59 (1982), which involves state agency petitions to terminate parental rights pursuant to 23 Pa.Cons.Stat.Ann. §§ 2511(a)(2), 2511(a)(5). In *C.M.E.* the third element of Section 2511(a)(2), irremediability, was at issue. A natural mother with limited intellectual abilities, was found incapable of parenting, but capable of possibly developing the necessary skills within maximum two to two and one-half years. The court concluded that the time needed to rehabilitate the mother was not reasonable, and this court reversed. This court refused to punish the mother for her lack of parenting skills based in part on her limited intellectual abilities. The natural mother had been in middle of rehabilitation when she moved, and her efforts to secure support services may have been thwarted by the complexities of jurisdictions of state welfare agencies.

Whereas the mother in *C.M.E.*, 301 Pa.Super. 579, 448 A.2d 59, was attempting rehabilitation and may have sought further help, appellant in the instant case has not been amenable to whatever benefits social service and psychological intervention may provide. Therefore, the court correctly found that appellant's refusal would not be remedied. Also, unlike *C.M.E.*, appellant's past encounters with therapy extended for a sufficient period of time to be evaluated. They proved unproductive. Nothing in the record supported the proposition that future encounters would yield a successful, or more precisely, a minimally acceptable result.

We recognize the importance of parental rights and agree that it would be improper to rush to extinguish them. *Adoption of Ferrante*, 334 Pa.Super. 53, 482 A.2d 1076. But in the instant case clear and convincing evidence support the conclusion that the deficiencies that exist will not be remedied. Considering the record as whole we conclude the nine-month to one-year therapy suggested by the experts would delay evaluating the situation but would not change the result.

## IV.

■ Once the requirements of Section 2511(a) are met, the court must consider Section 2511(b). *Adoption of J.J.*, 511 Pa. at 593, 515 A.2d at 885. This section directs us to consider the "needs and welfare of the child." The *Adoption of J.J.* instructs that the phrase "needs and welfare of the child," requires an examination of the best interests of the child. "[J]udicial inquiry is to be centered on the best interest of the child, rather than the fault of the parent." 511 Pa. at 607, 515 A.2d at 892.

The policy of examining the best interests of the child was discussed in a recent Superior Court decision, which preceded the Pennsylvania Supreme Court's decision in *Adoption of J.J.*

In recent times, the thrust of legislation in the area of termination of parental rights has focused on the best interest of the child and away from the practically inalienable right of parents. Parents can no longer claim exculpation from the responsibility of parenthood due to an inability to fulfill that function. The child, in the meantime, will grow and needs nurture, care, love and attention and stability if it is not to suffer irreversible damage from neglect, however occasioned. *In re Adoption of Michael J.C.*, 506 Pa. 517, 486 A.2d 371 (1984).

*Matter of K.L.P.*, 354 Pa.Super. 241, 245–46, 511 A.2d 852, 854 (1986).

A child needs a stable home and a stable family relationship. *William L.*, 477 Pa. 322, 383 A.2d 1228 (1978). The conditions which led to appellant's lack of stability and difficulty in parenting have not changed and the record supports the conclusion of her refusal to change. Her repeated and continued refusal to parent Baby A. has also not changed despite her alleged desire to do so. Thus the court properly terminated appellant's parental rights.

Affirmed.

CAVANAUGH, J. concurs in result.