J-S17001-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: V.M.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: K.C., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3155 EDA 2016 |

Appeal from the Decree and Order Entered September 12, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0000726-2016,
CP-51-DP-0000106-2015

BEFORE:   OLSON, STABILE, and MUSMANNO, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED APRIL 20, 2017**

K.C. ("Father") appeals from the decree, entered on September 12, 2016, terminating his parental rights to his female child, V.M.C. (born in August 2014) ("Child").[1,2]  We affirm.

The trial court made the following factual findings:

---

[1] Although Father also appeals from the order changing Child's permanency goal to adoption, he does not challenge that order in his statement of questions involved or argument section of his brief.  As such, Father waived any challenge to that order.  **See** Pa.R.A.P. 2116(a) and 2119(a).  Accordingly, we affirm the order changing Child's permanency goal to adoption.

[2] A.P., Child's mother ("Mother"), also appealed the September 21, 2016 decree and order.  Mother's appeal is addressed at Nos. 3243 EDA 2016 and 3244 EDA 2016

The family in this case became known to the Philadelphia County Department of Human Services ("DHS") on January 9, 2015, when DHS received a General Protective Services report that Father and A.P. ("Mother") used crack cocaine while caring for Child. On January 13, 2015, DHS visited Mother and Father in the home of M.P. ("Grandmother"), Child's maternal grandmother. DHS implemented a safety plan whereby Child would remain in the home in Grandmother's care, and Mother and Father would move out. Upon further investigation, DHS discovered that Grandmother was not an appropriate caregiver. DHS obtained an order for protective custody and removed Child, placing her in a foster home. On January 25, 2015, Child was adjudicated dependent and fully committed to DHS custody. The case was then transferred to a community umbrella agency ("CUA") which developed a single case plan ("SCP") with objectives for Father. Over the course of 2015 and 2016, Father repeatedly tested positive for cocaine at the Clinical Evaluation Unit ("CEU") and was never compliant with his SCP objectives. . . .

The goal change and termination [hearing] was held on September 12, 2016. The CUA case manager testified that Father's objectives since the start of this case were to attend CEU for dual diagnosis assessment and random drug screens, and attend parenting classes at the Achieving Reunification Center ("ARC"). The CUA case manager had discussed Father's objectives, which also included housing, with him in February 2015.

Father began drug and alcohol treatment soon after, but as of the date of the [hearing], Father had not successfully completed treatment. This was because Father's attendance was inconsistent and he repeatedly tested positive for drugs. The CUA case manager updated Father monthly on his objectives. Father signed releases for his drug and alcohol treatment and mental health treatment in December 2015. Father was discharged from drug and alcohol treatment twice, and had to be re-enrolled. Father tested positive for drugs on July 20, 2016, showed traces of cocaine and benzodiazepines on other screens, has tested positive for cocaine, and refused to submit to a random drug screen on the most recent occasion.

CUA provided Father money to enable him to remain in an appropriate house, but Father was evicted[.] Father's only

income is [Supplemental Social Security Income]. Father enrolled in mental health treatment at Greater Philadelphia Health Action ("GPHA"), but is unable to provide CUA or ARC with documents about his treatment there. In June 2016, Father's SCP objectives were expanded to include producing his GPHA mental health records. Father has signed releases, but still has not produced the[ records].

Father never progressed to unsupervised visits, and the CUA case manager rated him minimally compliant. Father attends monthly supervised visits, and has missed only one. While Father is appropriate with Child, Child has no trouble leaving Father when visits end. Child is happy to see his foster parents when visits end. It would be in Child's best interest to be adopted. Child is willing to move on from Father and would suffer no irreparable harm if his parental rights were terminated. Child is bonded with her foster parents and calls them "mom" and "dad". Father has a relationship with Child, but there would be no irreparable harm to Child if parental rights were terminated.

Father testified that he has attended all court hearings because he wants Child back. Father testified that he is attending GPHA weekly, but he had previously been discharged. Father testified that he had a negative drug screen from GPHA for July 20, 2016, when he tested positive at CEU. Father was unable to explain a July 16, 2016, positive drug screen from GPHA, or his rejected random screen at CEU. Father testified that his therapist at GPHA refused to give him the required treatment records. Father was discharged from GPHA several times for non-attendance, and testified that he had no excuse for his behavior. . . . The trial court [] found that Father was not credible.

Trial Court Opinion, 11/15/16, at 1-3 (internal citations, footnote, and certain capitalization omitted; paragraph breaks added).

The procedural history of this case is as follows. On August 12, 2016, DHS filed a petition to involuntarily terminate Father's parental rights with respect to Child. On September 12, 2016, the trial court held an evidentiary

hearing on the termination petition. Mother and Father were present and represented by counsel. A child advocate was present and represented Child. At the conclusion of the hearing, the trial court entered a decree terminating Father's parental rights to Child and an order changing her permanency goal to adoption. This timely appeal followed.[3]

Father presents five issues for our review:

1. Whether the trial court erred and/or abused its discretion by terminating [Father's parental rights pursuant to 23 Pa.C.S.A. §] 2511(a)(1) where [F]ather presented evidence that he substantially met his [] goals and tried to perform his parental duties[?]

2. Whether the trial court erred and/or abused its discretion by terminating [Father's parental rights pursuant to 23 Pa.C.S.A. §] 2511(a)(2) where [F]ather presented evidence that he has remedied his situation by taking parenting [classes, receiving] drug treatment[,] and receiving mental health treatment[?]

3. Whether the trial court erred and/or abused its discretion by terminating [Father's parental rights pursuant to 23 Pa.C.S.A. §] 2511(a)(5) where evidence was provided to establish that [C]hild was removed from the care of [F]ather and [M]other, and that [F]ather is now capable of caring for [C]hild[?]

4. Whether the trial court erred and/or abused its discretion by terminating [Father's parental rights pursuant to 23 Pa.C.S.A. §] 2511(a)(8) where evidence was presented to show that [F]ather is now capable of caring for [C]hild since he has completed parenting [classes] and is receiving [drug, alcohol, and mental health treatment?]

---

[3] Father filed a concise statement of errors complained of on appeal ("concise statement") contemporaneously with his notice of appeal. *See* Pa.R.A.P. 1925(a)(2)(i) and (b). On November 15, 2016, the trial court issued its Rule 1925(a) opinion. All of Father's issues were included in his concise statement.

5. Whether the trial court erred and/or abused its discretion by terminating [Father's parental rights pursuant to 23 Pa.C.S.A. §] 2511(b) where evidence was presented that established [C]hild had a strong parental bond with [F]ather and had lived with [F]ather for the first months of her life[?]

Father's Brief at 7.

We consider all of Father's issues together as they challenge the sufficiency of the evidence to terminate his parental rights. We

must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.

*In re C.M.C.*, 140 A.3d 699, 704 (Pa. Super. 2016) (citations omitted).

"The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid." *In re K.H.B.*, 107 A.3d 175, 178 (Pa. Super. 2014) (citation omitted).

Father argues that the trial court erred in terminating his parental rights under 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). *In re*

*Adoption of C.J.P.*, 114 A.3d 1046, 1050 (Pa. Super. 2015) (citation omitted). We focus our attention on subsection 2511(a)(2). Section 2511 provides, in relevant part:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

As this Court has explained:

In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect[,] or refusal; (2) such incapacity, abuse, neglect[,] or refusal has caused the child to be without essential parental care, control[,] or

subsistence necessary for [her] physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect[,] or refusal cannot or will not be remedied. The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa. Super. 2015) (internal quotation marks and citation omitted).

Father asserts that he remedied the conditions that caused the placement of Child and he is now able to care for Child. Father avers that he has substantially completed his goals of attending parenting classes and engaging in drug, alcohol, and mental health treatment. This argument fails because Father has not successfully completed drug and alcohol treatment. Moreover, Father refuses to turn over his mental health records to show that he is progressing in his mental health treatment.

Father also claims that he can provide a safe home for Child and that he has the present capacity to care for her. This argument is also without merit. As noted above, Father continues to use cocaine and benzodiazepines. Moreover, Father refused to take certain drug tests, indicating that he is likely using other drugs. Father was also evicted from his residence because of his failure to pay rent despite CUA providing Father with rent assistance. Thus, Father cannot, or will not, provide a safe home for himself and Child.

Father is correct "that past incapacity alone is not a sufficient basis for finding present incapacity or refusal." *In re Adoption of A.N.D.*, 520 A.2d 31, 35 (Pa. Super. 1986), *appeal denied*, 533 A.2d 710 & 533 A.2d 713 (Pa. 1987). In this case, as in *A.N.D.*, the trial court "combined past evidence of incapacity with a finding of current incapacity and refusal." *Id.* This is permissible because a parent's past actions can inform the trial court as to the parent's progress and likely future performance. *See Matter of Adoption of G.T.M.*, 483 A.2d 1355, 1359 & n.4 (Pa. 1984).

After considering the totality of the circumstances, the trial court determined that DHS proved by clear and convincing evidence that Father caused Child to be without essential parental care necessary for her well-being. Moreover, the trial court determined that DHS proved by clear and convincing evidence that Father cannot or will not remedy his incapacity which led to Child being without essential parental care. For the reasons set forth above, we ascertain no abuse of discretion in this determination.

Having determined that DHS satisfied subsection 2511(a)(2), we next consider section 2511(b)'s requirements. The focus in terminating parental rights under section 2511(a) is on the parent, but the focus under section 2511(b) in on the child. *In re P.Z.*, 113 A.3d 840, 850 (Pa. Super. 2015) (citation omitted).

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding

- 8 -

analysis and the term bond is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the []section 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

*C.D.R.*, 111 A.3d at 1219 (internal quotation marks and citations omitted).

Father argues that there is a bond with Child because she lived with him for the first months of her life. This argument, however, indicates why there is no bond between Child and Father. Child was so young at the time she lived with Father that she was unable to form a meaningful bond with Father. Father also argues that he continued visiting Child in order to maintain his bond with her. As noted above, none of Father's visits were unsupervised. Child calls her foster parents "mom" and "dad" and has no problem separating from Father at the conclusion of the visits. Instead, Child is happy to reunite with her foster parents. Therefore, we ascertain no abuse of discretion in the trial court's determination that there was no meaningful bond between Father and Child.

Furthermore, "[t]he psychological aspect of parenthood is more important in terms of the development of the child and [his or her] mental and emotional health than the coincidence of biological or natural parenthood." *In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008) (citation omitted). Thus, the trial court may emphasize the safety needs of the child when evaluating section 2511(b). *See In re K.Z.S.*, 946 A.2d 753,

763-764 (Pa. Super. 2008). As noted above, Father is a drug addict who continues to use cocaine and other drugs despite knowing that he is subject to drug testing. He is unable to maintain consistent housing, even with the financial support of outside agencies. Therefore, terminating Father's parental rights is best for Child's safety.

After considering the relevant factors, the trial court determined that DHS proved by clear and convincing evidence that terminating Father's parental rights was in Child's best interest. We ascertain no abuse of discretion or error of law in this determination. As DHS satisfied section 2511(a)(2) and (b), we affirm the decree terminating Father's parental rights as to Child.

Decree and order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/20/2017