J-S31001-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: M.A.R.-K., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: L.K., MOTHER | : : : : : : | |
| | : | No. 1431 EDA 2022 |

Appeal from the Decree Entered April 27, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000223-2022

BEFORE:   BOWES, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.:                    **FILED NOVEMBER 8, 2022**

L.K. ("Mother") appeals from the April 27, 2022 decree granting the petition filed by the Philadelphia Department of Human Services ("DHS") to involuntarily terminate her parental rights to her son, M.A.R.-K., born in September 2019.  We affirm.

We summarize the factual and procedural history as follows.  DHS has been involved with this family since 2016.  In April 2016, DHS received concerning reports that Mother failed to adequately supervise two of M.A.R.-K.'s older siblings.  The reports also noted Mother's drug use as well as the

_____

[*] Former Justice specially assigned to the Superior Court.

incarceration of M.A.R.-K.'s father, A.K. ("Father").[1]  N.T., 4/27/22, at 8-9. The court terminated Mother's and Father's parental rights to these siblings on June 2, 2017.  *Id*. at 9.  Likewise, on January 7, 2019, the court terminated Mother's and Father's parental rights to an additional child that had been born in October 2017.  *Id*. at 9-10.

M.A.R.-K. became known to DHS in September 2020, upon receipt of a General Protective Services ("GPS") report alleging that Mother, who appeared to be intoxicated, left him in a vehicle unsupervised.  *Id*. at 10.  After hospital evaluations of both Mother and M.A.R.-K.,[2] the agency crafted a safety plan that placed the child with a family friend.  *Id*. at 11.  However, DHS obtained protective custody the following day because Mother attempted to remove M.A.R.-K. in contravention of the safety plan.  *Id*.  At the time, Mother again appeared to be under the influence and revealed that she suffered from bipolar disorder.  *Id*.  Since December 2020, M.A.R.-K. has remained in his current pre-adoptive kinship foster home.  *Id*. at 16.

The trial court adjudicated M.A.R.-K. dependent on March 23, 2021, and found aggravating circumstances as to both Mother and Father.  Exhibit DHS

---

[1] On April 27, 2022, A.K. confirmed his consent to the voluntary relinquishment of parental rights to M.A.R.-K.  He did not participate in the instant appeal.

[2] While the hospital tested Mother for the presence of drugs and alcohol, Mother refused to release the results of those tests to DHS.  N.T., 4/27/22, at 11.

2 at 32-34. It established a placement goal of return to parent or guardian and awarded Mother weekly supervised visitations with M.A.R.-K. *Id*. at 33. The court also fashioned objectives consistent with the single case plan ("SCP") and referred Mother to the Clinical Evaluation Unit ("CEU") for random drug screens. DHS provided Mother programming through the Achieving Reunification Center ("ARC") to address her problems with parenting, employment, and anger management. *Id*.

Thereafter, the trial court conducted permanency review hearings at regular intervals. The court characterized Mother's compliance with the permanency plan as minimal in July 2021 and November 2021. *Id*. at 35, 37. Further, in July 2021, the court recognized Mother's failure to visit M.A.R.-K. since May 2021 and reduced her visitations to biweekly supervised visitation at the agency. *Id*. at 36. The court anticipated further modification, noting,

> If Mother fails to confirm her . . . visit or fail[s] to appear after confirming, her visits are to be modified to once a month supervised visits with [M.A.R.-K.]. If Mother makes 4 consecutive visits, Mother may again have weekly supervised visits with [M.A.R.-K.] at the agency.

*Id*. In January 2022, the court found "Mother non-compliant with all single case plan objectives and recommendations." *Id*. at 38.

On April 9, 2022, DHS filed petitions for the termination of parental rights and goal change. While represented by separate counsel, neither Mother nor Father was present at the ensuing hearing. M.A.R.-K. was

represented by legal counsel (also referred to as a "child advocate").[3] DHS presented Cheryl Wellington, who is the family's case manager from Community Umbrella Agency ("CUA"), and several exhibits, which were admitted without objection. N.T., 4/27/22, at 5-6. Mother's counsel did not present any evidence.

At the conclusion of the hearing, the trial court announced from the bench its decision to terminate Mother's parental rights to M.A.R.-K. pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). *Id*. at 22-23. The court memorialized this determination by decree entered on April 27, 2022. Mother filed a timely notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

Mother raises the following issues for our review:

1. Whether the trial court committed reversible error, when it involuntarily terminated Mother's parental rights where such determination was not supported by clear and convincing evidence under the [A]doption [A]ct, 23 [Pa.C.S. § 2511(a)?]

2. Whether the trial court committed reversible error when it involuntarily terminated Mother's parental rights without giving primary consideration to the effect that the termination would have on the developmental, physical, and emotional needs of the child as required by the [A]doption [A]ct, 23 [Pa.C.S. § 2511(b)?]

3. Whether the trial court erred because the evidence was overwhelming and undisputed that Mother demonstrated a genuine interest and sincere, persistent, and unrelenting effort to maintain a parent-child relationship with her child[?]

Mother's brief at 4.

---

[3] We note with disfavor the failure of the child advocate to file a brief with this Court.

- 4 -

At the outset, we observe that Mother's third issue, concerning the weight of the evidence, is waived because she failed to raise it in her concise statement and the trial court did not address that contention. **See In re M.Z.T.M.W.**, 163 A.3d 462, 465-66 (Pa.Super. 2017) (explaining, in part, this Court will not review an appellant's claim unless it is included in both the concise statement of errors complained of on appeal and statement of questions involved). As the issue is waived, we do not address the contention as stated in the statement of questions presented. Nevertheless, to the extent that Mother's remaining issues subsume this argument, we address it in that context.

Our standard of review is as follows. We review involuntary termination orders for an abuse of discretion, which our Supreme Court has explained "is limited to a determination of whether the decree of the termination court is supported by competent evidence." **In re Adoption of C.M.**, 255 A.3d 343, 358 (Pa. 2021). When applying this standard, appellate courts must accept the trial court's findings of fact and credibility determinations if they are supported by the record. **Interest of S.K.L.R.**, 256 A.3d 1108, 1123 (Pa. 2021). "Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion." **In re Adoption of L.A.K.**, 265 A.3d 580, 591 (Pa. 2021). An appellate court may reverse for an abuse of discretion "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." **Id**.

Termination of parental rights is governed by § 2511 of the Adoption Act. If the trial court determines the petitioner established grounds for termination under § 2511(a) by clear and convincing evidence, then the court must assess the petition under § 2511(b), which focuses on the child's needs and welfare. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

In the case *sub judice*, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). In order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of § 2511(a), as well as § 2511(b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004). As such, while the trial court analyzes only § 2511(a)(1) and (b) in its Rule 1925(a) opinion, we review § 2511(a)(2) and (b) within.

Here, we analyze the court's termination decree pursuant to § 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . . .

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

With regard to termination of parental rights pursuant to § 2511(a)(2), we have indicated:

In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re S.C.*, 247 A.3d 1097, 1104 (Pa.Super. 2021) (citation omitted). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." *Matter of Adoption of M.A.B.*, 166 A.3d 434, 443 (Pa.Super. 2017) (citation omitted). As such, "A parent's vow to cooperate, after a long period of uncooperativeness regarding the

necessity or availability of services, may properly be rejected as untimely or disingenuous." ***In re S.C.***, ***supra*** at 1105 (citation omitted).

In challenging grounds for termination pursuant to § 2511(a)(2), while acknowledging past difficulties, Mother baldly asserts a present capacity to care for M.A.R.-K. In full, she states,

> As outlined by the Superior Court in the matter of ***In Re Adoption of A.N.D.***, 520 A.2d 31 (Pa.Super. 1086), past incapacity alone is not sufficient for involuntary termination, there must be evidence of a parent's incapacity. Here, though Mother has struggled with substance abuse, Mother has worked to meet her objectives to the best of her abilities. Grounds do not exist to terminate Mother's rights under § 2511(a)(2) because it is clear that Mother has the present capacity to care for her child.

Mother's brief at 11.

Mother's three-sentence argument fails to identify anything to support her assertions of progress and present capacity. However, in other sections of her brief, Mother highlights that she attended five of the weekly supervised visitations scheduled since March 2021, completed parenting classes, and obtained suitable housing. ***Id***. at 11, 12-13. However, even considering these claimed accomplishments, the certified record belies Mother's contention that she complied with her SCP objectives and is has the present capacity to care for her son.

Stated simply, Mother neglected to rebuff the evidence that she failed complete her court-ordered goals aimed at reunification. Cheryl Wellington, CUA case manager, recounted Mother's SCP objectives as: (1) complying with mental health counseling; (2) participating in a drug and alcohol treatment,

as well as random drug screening; (3) completing domestic violence and anger management programs; (4) and attending visitation.  N.T., 4/27/22, at 12-14.  Ms. Wellington further made clear that Mother was aware of these goals which remained the same throughout the case.  *Id*. at 12, 14-15.  She also noted Mother's failure to provide current documentation regarding attendance at mental health counseling and her refusal to sign new releases once prior executed releases expired.  *Id*. at 12.  Ms. Wellington explained, "She attends Community Counsel [sic].  However, she has not signed releases for me to obtain the information. . . .  [S]he signed consents for me last year. . . .  They expired."  *Id*.  Ms. Wellington also highlighted Mother's failure to provide documentation as to her completion of the required drug and alcohol treatment, domestic violence counseling, and anger management.  *Id*. at 13-14.  She also confirmed Mother's lack of compliance with random drug screens.  *Id*. at 13.  Ultimately, Ms. Wellington opined succinctly, "Mom has not complied with any of the objectives.  And [M]om hasn't seen [M.A.R.-K.] since May of last year."  *Id*. at 15.

Hence, the certified record substantiates the trial court's conclusion that Mother's repeated and continued incapacity, abuse, neglect, or refusal has caused M.A.R.-K. to be without essential parental control or subsistence necessary for his physical and mental well-being.  Notwithstanding Mother's claimed achievements relating to the parenting program and housing goal, DHS established that she still has not complied with the requirements relating

to mental health counseling, substance abuse, domestic violence, or anger management.

Furthermore, Mother's attendance at five of the weekly supervised visitations during the three and one-half months between March 23, 2021, and July 8, 2021, is scarcely evidence of progress toward the visitation goal. This inadequacy is heightened by the fact that, subsequent to this claimed period of achievement, the trial court found that Mother failed to visit M.A.R.-K. since May 2021 and reduced the visitation schedule from weekly visits to once every two weeks. *See* N.T., 4/27/22, at 5-6 (Exhibit DHS 2 at 36). Thus, contrary to Mother's protestations, DHS presented clear and convincing evidence that Mother failed to complete her court-ordered goals and cannot or will not remedy the causes of her parental incapacity. As we discern no abuse of discretion, we do not disturb the trial court's findings.

Next, we address whether termination was proper under §2511(b) and conclude that that it was. As to § 2511(b), our Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa.Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791. However, as

discussed below, evaluation of a child's bonds is not always an easy task.

*In re T.S.M.*, *supra* at 267. "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa.Super. 2008) (citation omitted). When evaluating a parental bond, "[T]he court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, [§] 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa.Super. 2010) (internal citations omitted). Nevertheless, "the mere existence of a bond or attachment of a child to a parent will not necessarily result in the denial of a termination petition." *T.S.M.*, *supra* at 267. In weighing the bond considerations pursuant to § 2511(b), "courts must keep the ticking clock of childhood ever in mind." *Id*. at 269. The *T.S.M.* Court observed, "[c]hildren are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." *Id*.

Moreover,

While a parent's emotional bond with his or her child is a major aspect of the [§] 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

[I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love,

- 11 -

> comfort, security, and stability the child might have with the foster parent. . . .

*In re Adoption of C.D.R.*, *supra* at 1219 (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011)) (quotation marks and citations omitted).

Instantly, in determining that terminating Mother's parental rights would serve M.A.R.-K.'s needs and welfare pursuant to § 2511(b), the trial court emphasized M.A.R.-K.'s relationship with his kinship foster parent. The court reasoned:

> In this case, this [c]ourt had adequate evidence of the status of the parent-child bond to examine and determine whether terminating Mother's parental rights would destroy a necessary and beneficial relationship.
>
> This [c]ourt heard credible, persuasive testimony from Ms. Wellington who testified [M.A.R.-K.] has been in the current foster home with his [a]unt, N.P., since December 2020. She noted that N.P. was interested in [a]doption and noted [M.A.R.-K.] looks to his [a]unt to meet all his needs, as well as love, protection, and support. Ms. Wellington opined [M.A.R.-K.] would not suffer irreparable harm if Mother's parental rights were terminated and [M.A.R.-K.] were to be adopted by his pre-adoptive resource parent. She opined [M.A.R.-K.] has a parent-child bond with his [a]unt.
>
> Based on the clear and convincing evidence presented, this [c]ourt found that termination of Mother's parental rights met the developmental, physical, and emotional needs and welfare of [M.A.R.-K.]. . . .
>
> Here, the totality of the evidence supports this [c]ourt's conclusion that termination of Mother's parental rights is in the best interests of this [c]hild. This [c]ourt found that this [c]hild's bond with his [m]other exists in form only and not in substance. To sever such a relationship would not destroy any existing necessary and beneficial union.

Trial Court Opinion, 6/30/22, at 16-17.

Mother, however, argues that the certified record did not sustain the court's findings regarding the lack of a parent-child bond or that her relationship with M.A.R.-K. was detrimental to the child. Mother's brief at 15. She further maintains, baldly and without reference to the certified record, that the court erred in terminating parental rights without affording her an opportunity to bond with M.A.R.-K. *Id*.

Contrary to Mother's protestations, the certified record supports the court's finding that DHS established the absence of a meaningful parent-child bond. Indeed, Ms. Wellington testified that no parent-child bond exists between Mother and M.A.R.-K. N.T., 4/27/22, at 15. She described that when Mother did sporadically attend the scheduled visitations with M.A.R.-K., the child "[became] very aggressive with his mother. He hit [her], he pull[ed] her hair." *Id*. at 15. Ms. Wellington similarly recounted whining and crying by M.A.R.-K. during supervised visits. *Id*. at 16.

Instead, Ms. Wellington expressed that [M.A.R.-K.] shares a bond with his foster parent, whom he calls "mom." *Id.* at 16-17. Notably, the three-year-old child has lived in his current pre-adoptive kinship foster home for the past two years. *Id*. at 16. As such, Ms. Wellington opined that there would be no irreparable harm if Mother's parental rights were terminated. *Id.* at 17. When asked why, Ms. Wellington explained, "Mom has not visited [M.A.R.-K.] in about a year. There's no bond between the two of them, and [M]om's inability to give clean drug screens." *Id*. Ms. Wellington further confirmed that it would be in M.A.R.-K.'s best interest to be available for adoption,

stating, "Mom has not been involved for a year. Taking him from the only place he knows as . . . stable would cause harm for him, and putting him with someone who is -- we don't know if they're still using drugs. It would be harmful. . . ." *Id*. at 18. Accordingly, the certified record supports the trial court's finding that the termination of Mother's parental rights serves M.A.R.-K.'s developmental, physical, and emotional needs and welfare pursuant to § 2511(b).

For all of the foregoing reasons, we affirm the decree terminating Mother's parental rights.

Decree affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/8/2022