J-S43016-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: B.G.P., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.P., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2204 EDA 2022 |

Appeal from the Decree Entered August 31, 2022,
in the Court of Common Pleas of Philadelphia County,
Juvenile Division at No(s):  CP-51-AP-0000476-2022.

BEFORE:  DUBOW, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY KUNSELMAN, J.:          **FILED JANUARY 27, 2023**

K.P. (Mother) appeals from the decree entered by the Philadelphia Court of Common Pleas, which terminated her rights to her 10-month-old daughter B.G.P. a/k/a/ K.P.-I. (the Child), pursuant to the Adoption Act. ***See*** 23 Pa.C.S.A. § 2511(a)(2), (a)(5), and (b).[1, 2]  After review, we affirm.

The record provides the following relevant factual and procedural history.  The family came to the attention of the Philadelphia Department of Human Services (DHS) in 2019 after receiving a report that one of the Child's siblings died while in Mother's care.  DHS learned that Mother was co-sleeping

---

[1] We clarify that the caption of this case, ***B.G.P.***, reflects the initials of the Child's name as listed on the Child's birth certificate.  We note, however, another name (K.P.-I.) has also been used.  As mentioned below, this Child has been the subject of two prior appeals.  In those cases, we listed the Child's name as K.P.-I.

[2] S.C. (Father) voluntarily relinquished his parental rights.

with the sibling, an infant, and that the sibling died from suffocation. Mother had been warned of the dangers of co-sleeping, and she was reportedly intoxicated on the night of the incident.

In November 2021, DHS received a general protective services report indicating that Mother had given birth to the Child at issue. The report stated that Mother and the Child tested positive for phencyclidine (PCP), and that Mother said she suffered from bi-polar disorder. DHS visited Mother to assess the home and discuss the report, but Mother refused to cooperate with DHS. That day, Mother attempted to remove the Child from the hospital, but was escorted out and restricted from returning. DHS obtained an order of protective custody, and the Child was placed in foster care. DHS petitioned for dependency and created a single case plan to aid with reunification.

In December 2021, the juvenile court held an adjudicatory hearing. The court adjudicated the child dependent. Mother's visits were suspended after the court rendered a finding that she posed "a grave threat."[3] The court allowed Mother to resume visits once she participated in treatment for 90 days, at which time the visits would we supervised and bi-weekly. Mother appealed that order; this Court affirmed the juvenile court's decision. *See In the Interest of: K.P.-I.*, 284 A.3d 928 (Table), 2022 WL 3572931 (Pa. Super. August 19, 2022) (non-precedential decision).

_____

[3] In dependency cases, where reunification remains the goal, this Court has stated that parental visitation of the child may not be denied or reduced unless it poses a grave threat to the child. *See In re C.J.*, 729 A.2d 89, 95 (Pa. Super. 1999).

In March 2022, the juvenile court held a permanency review hearing and found Mother's compliance to be minimal. The court also rendered a finding that "aggravating circumstances" exist following the termination of Mother's rights to the Child's siblings.[4] In June 2022, the single case plan was revised. Mother's objectives were to secure housing, employment, drug and alcohol treatment, mental health treatment, and to participate in five random drug screens. The court also ordered Mother not to have abusive contact with caseworkers, caregivers, or medical staff treating the Child. Mother filed a second appeal to contest the aggravating circumstances finding. This Court affirmed the juvenile court's order. *See In the Interest of: K.P.-I.*, --A.3d --, 2022 WL 17544185 (Pa. Super. December 9, 2022) (non-precedential decision).

---

[4] The Juvenile Act provides that "aggravating circumstances" exist when:

> (2) The child or another child of the parent has been the victim of physical abuse resulting in serious bodily injury, sexual violence or aggravated physical neglect by the parent.

> […]

> (5) The parental rights of the parent have been involuntarily terminated with respect to a child of the parent.

42 Pa.C.S.A. § 6302 (Definitions).

When aggravating circumstances exist, the juvenile court does not need to ascertain whether the local children and youth agency made reasonable efforts to reunify the family. *See* 42 Pa.C.S.A. § 6351(b).

On August 31, 2022, the court held a hearing on DHS's petition to terminate Mother's rights. The court granted the petition on the same day. Mother timely filed this appeal.

Mother presents the following issues, which we restate for ease of disposition.[5]

> 1. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother, pursuant to 23 Pa.C.S.A. § 2511(a)(2), where Mother presented evidence that she has remedied her situation by maintaining housing, taking parenting classes and mental health treatment and working two jobs and has the present capacity to care for her Child?
>
> 2. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother, pursuant to 23 Pa.C.S.A. § 2511(a)(5), where evidence was provided to establish that the Child was removed from the care of the Mother and Mother is now capable of caring for her Child?
>
> 3. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother to 23 Pa.C.S.A. § 2511(b) where evidence was presented that Mother was denied visitation and the chance to bond with her Child?

Mother's Brief at 7.

We begin with our well-settled standard of review:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact

---

[5] In an apparent oversight, Mother also appeals the decree under Section 2511(a)(1) and (a)(8). However, the record indicates that the trial court explicitly found that DHS did not meet its burden under Section 2511(a)(1); moreover, DHS did not petition for termination under Section 2511(a)(8).

and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Our Supreme Court has repeatedly stated that in termination cases, deference to the trial court is particularly crucial. *In re Adoption of L.A.K.*, 265 A.3d 580, 597 (Pa. 2021); *see also Interest of S.K.L.R.*, 265 A.3d 1108, 1124 (Pa. 2021) ("When a trial court makes a 'close call' in a fact-intensive case involving…the termination of parental rights, the appellate court should review the record for an abuse of discretion and for whether evidence supports that trial court's conclusions; the appellate could should not search the record for contrary conclusions or substitute its judgment for that of the trial court."). The abuse-of-discretion standard in termination cases "is a highly deferential standard and, to the extent that record supports the court's decision, we must affirm even though evidence exists that would also support a contrary determination." *In re P.Z.*, 113 A.3d 840, 849 (Pa. Super. 2015) (citation omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to section 2511(b): determination of the needs and welfare of the child[.]

*In re C.M.K.*, 203 A.3d 258, 261-262 (Pa. Super. 2019) (citation omitted).

Clear and convincing evidence is evidence that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*) (quoting *Matter of Adoption Charles E.D.M., II*, 708 A.2d 88, 91 (Pa. 1998)).

We may uphold a termination decision if any proper basis exists for the result reached. *C.S.*, 761 A.2d at 1201. We need only agree with the orphans' court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

We therefore address Mother's first appellate issue, which challenges the court's termination under Section 2511(a)(2). Section 2511(a)(2) provides:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> [...]
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2).

To satisfy the requirements of Section 2511(a)(2), the moving party must prove "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." **C.M.K.**, 203 A.3d at 262 (citation omitted).

The trial court directs us to the transcript of the proceedings for its findings under this subsection. The court stated:

> In this case, it was within [Mother's] ability to take the necessary steps to complete certain objectives in order to have visitation with her Child. [Mother] failed to do so since the inception of this case. She has been combative with any provider that the court has received any evidence of.
>
> She has been combative in court. She has been combative toward the judge. She has been combative toward her counsel. [Mother] has not demonstrated any ability or any indication that her continued demonstration of her incapacity, abuse, or neglect to provide this Child with essential parental care would change even if additional time was given to [Mother].

- 7 -

> [Mother] has been the sole reason that her Child remains in care at this point. [Mother] has not engaged in her case plan objectives. Counsel for the city was correct. The documents produced by [Mother's] counsel do not show that she completed [the parenting goal] as prescribed by the court.
>
> She did a four hour parenting course. And despite what [Mother] is saying, this is not similar to high school. The reason [Mother] has been ordered for parenting for multiple occasions is because the court found on prior occasions she did not have the necessary skills to parent her children – to provide for them. So [DHS] has more than met its burden under Section 2511(a)(2).
>
> [Mother] has not engaged in her mental health objectives. The discharge from NET makes that clear. Even the document produced by [Mother's] counsel shows that she did not successfully complete that. And in fact, in as early as February [2022, Mother] was still testing positive while she was receiving treatment.

N.T. at 50-51.

The trial court added to these findings when it addressed its rationale under Section 2511(a)(5); however, we restate them here because such findings are also relevant under Section 2511(a)(2). The court further determined:

> Her behavior in fact demonstrates that [Mother] has not complied with anything.
>
> And that there would not be any benefit of any additional time provided to [Mother,] as she has had since December [2021] to come into compliance. The Child was taken at birth [in November 2021]. Mother has not demonstrated the ability to do anything to change the current situation. And she's not any closer to reunification today than she was at the time that the Child came into her care.

N.T. at 53.

- 8 -

On appeal, Mother argues that past incapacity alone is not sufficient basis for involuntary termination. *See* Mother's Brief at 16 (citing *In re Adoption of A.N.D.*, 520 A.2d 31 (Pa. Super. 1986)). She argues that she substantially completed her single case plan objectives, and that she can provide a safe home for herself and the Child. *Id.* Thus, she concludes that she has the present capacity to parent and that termination under Section 2511(a)(2) was improper.

Upon review, we conclude Mother's argument is without merit. The record supports the trial court's determination that Mother made no substantial effort to reunify with the Child. Mother never attended the court-ordered assessment to help DHS and the court understand her dual diagnosis needs. Mother only took one drug screen. Although Mother attended a dual diagnosis program, she was discharged in May 2022 because her behavior became a danger to the staff. Similarly, Mother failed to complete the parenting program offered through the Achieving Reunification Center. In her Brief, Mother cites to no example of her compliance or evidence suggesting that the trial court's findings were without record support. For these reasons, we conclude the trial court did not error or abuse its discretion when it concluded DHS proved termination was warranted under Section 2511(a)(2).

Having concluded that the trial court's decision was proper under Section 2511(a)(2), we need not address Mother's second issue involving Section 2511(a)(5). *In re: B.L.W.*, *supra*. We may move directly to Mother's

third appellate issue, which concerns Section 2511(b) – the second step in the bifurcated termination analysis.

Section 2511(b) of the Adoption Act provides:

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b).

This Court has explained that:

> [S]ection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.,* 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.* However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id.* at 763.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

Concerning the bond, the question is not merely whether a bond exists, but whether termination would destroy this existing, necessary and beneficial relationship. *See C.M.K.*, 203 A.2d at 264 (citation omitted); *see also K.Z.S.*, 946 A.2d at 764 (holding there was no bond worth preserving where the child had been in foster care for most of the child's life, which caused the resulting bond to be too attenuated). Moreover, the court is not required to use expert testimony to resolve the bond analysis. *In re Z.P.*, 994 A.2d at 1121 (citing *In re K.K.R.-S.*, 958 A.2d 529, 533 (Pa. Super. 2008)). And a parent's own feeling of love and affection for the child does not preclude the termination. *Id.* Finally, we emphasize that "[w]hile a parent's emotional bond with her and/or her child is a major aspect of the Section 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child." *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (citation omitted).

The trial court set forth its findings under Section 2511(b) as follows:

> [Mother] has not seen this Child since December 8, 2021. There is no indication that there is any parent/child bond between [Mother] and this eleven month-old Child, who has spent [her] life in care. […] I do not find that the Child would suffer any irreparable harm by severing parental rights in this case.

N.T. at 53.

In her Brief, Mother argues that she was never permitted to live or visit with the Child. *See* Mother's Brief at 18. She argues that she should have been provided with ongoing visits, and that the court should ordered parent-

child interactive therapy so that she could continue to have visitation and a bond with the Child. *Id.* at 18-20.

Upon review, we conclude Mother's argument merits no relief. Her reasoning omits the fact that visitation was afforded to Mother, so long as she engaged in mental health and drug and alcohol treatment for 90 days. Mother chose not to do so. Furthermore, after the court found the existence of a "grave threat" and "aggravating circumstances," the Agency was relieved of providing reunification efforts. The Section 2511(b) analysis depends on the circumstances of a particular case. *See J.M.*, 991 A.2d at 324. Had this case not involved "grave threat" and "aggravating circumstances" findings – which have been already affirmed by this Court – then a 90-day suspension of visitation might have been improper. But even then, we note that this aspect of the bifurcated analysis focuses on the needs and welfare of the child, not the conduct of the parent. *See id.*; *see also C.M.K.*, 203 A.3d at 261-262. When turning our attention to the best interests of the Child, we observe that there was no evidence of a bond, and thus it was reasonable for the trial court to infer that none exists, and that the Child would not suffer irreparable harm if the parental rights were severed. The court was well within its discretion to determine that termination would best serve the Child's needs and welfare.

In sum, we discern no abuse of discretion, nor error of law, when the Court granted the petition filed by DHS and terminated Mother's rights under 23 Pa.C.S.A. § 2511(a)(2) and (b).

Decree affirmed.

- 12 -

Judge Nichols joins the Memorandum.

Judge Dubow did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/27/2023